Melvin J. HICKENBOTTOM, Petitioner,

v.

DISTRICT OF COLUMBIA UNEMPLOY-
MENT COMPENSATION BOARD,
Respondent.

Woodward & Lothrop, Inc., Intervenor.

No. 5410.

District of Columbia Court of Appeals.

Argued Oct. 6, 1970.

Decided Feb. 12, 1971.

Maribeth Halloran, Washington, D.C., for petitioner.

George A. Ross, F. G. Gordon, Jr. and Russell L. Carter, Washington, D.C., were on the brief, for respondent.

Timothy J. Bloomfield, Washington, D. C., with whom John J. Ross, Washington, D.C., was on the brief, for intervenor.

Before KERN and NEBEKER, Associate Judges, and QUINN, Associate Judge, Retired.

NEBEKER, Associate Judge:

This is a petition to review[1] a determination of the District of Columbia Unemployment Compensation Board (hereinafter called the Board) disqualifying petitioner from receiving unemployment benefits under the District of Columbia Unemployment Compensation Act[2] (hereinafter called the Act) for a period of 5 weeks. The appeals examiner concluded (1) that petitioner left work without permission of his supervisor; (2) that the employer was justified in requiring the petitioner, three days after he left work with a toothache, to produce proof of his inability to complete his tour of duty, and that failure to do so was leave without medical verification; and (3) that he participated in an unauthorized demonstration on June 26, 1969. The Board affirmed the appeals examiner's decision without modification. Petitioner's conduct was found to constitute violations of the company's rules, and held to be misconduct as contemplated by D.C.Code 1967, § 46–310(b).[3] Petitioner contends as a matter of law that this activity cannot constitute misconduct and that the findings of fact do not legally support the examiner's conclusions. We agree and reverse.

The record reveals that petitioner was employed by intervenor (a local department store) as a truck driver. During the week in question, he had seen his dentist about his tooth problem. On Friday, June 20, 1969, petitioner asserted that he had reported to work with a toothache but had proceeded to load his truck in preparation for the day's deliveries. Before he left the warehouse, he was informed by the personnel manager of a reduction in force and that he was being demoted from driver to helper. Thereafter, he advised the supervisor that he had a toothache at which time he was told to see the nurse. The nurse examined him, found no swelling but gave him some medication and a sick slip excusing him from work. In addition, she advised him to see his dentist.[4] Petitioner

1. The scope of this court's review is set forth in D.C.Code 1967, §§ 46–312(a) and 1–1510 (Supp. III, 1970).

2. D.C.Code 1967, § 46–301 et seq.

3. That statute provides in part: "An individual who has been discharged for misconduct occurring in the course of his most recent work * * * shall not be eligible for benefits * * *."

4. Petitioner testified that he was unsuccessful in his effort to see a dentist.

reported to his work station but was unable to physically deliver the sick slip to the supervisor,[5] so he clipped it to his time card and left. The following Monday he was accused of being absent without a sick slip, but the slip was then found where petitioner had left it.

◼ As one ground for discharge and subsequent denial of unemployment benefits, the appeals examiner concluded that petitioner failed to obtain permission of his supervisor before leaving his duty station on June 20, 1969. We conclude such was not required of petitioner and cannot form a basis for denial of these benefits.

The company rule on leaving work because of illness says nothing about obtaining permission from the supervisor. It explicitly states, "If you feel you must leave your department for medical reasons after you have reported to work, report to the Medical Department and request a medical excuse to leave early." There is no evidence in the record establishing a change in the sick rule. Accordingly, the challenged denial of benefits cannot stand on this reason.[6]

On Saturday, the following day, many of the warehouse employees did not report to work as a protest against the company's demotions on the preceding day. As a direct result of this, the company, on the following Monday, suspended the rules on absences (sick or otherwise) and required verification of the employees' whereabouts on the previous Saturday.[7] No charge was made that petitioner had taken part in Saturday's activities; nevertheless, he was required to verify that he had visited the dentist on Friday. The burden of proof was on him and he was suspended until he complied. No proof was forthcoming and

the company cited this failure to abide its rule as a ground for discharge. The appeals examiner found the failure to be misconduct. We hold this to be error.

◼ We must look to authorities interpreting this and similar legislation to know what is considered misconduct in this area of employer control of employee activities. A review of the legislative history of the Act reveals that:

"* * * The purposes of unemployment [insurance] are to alleviate the shock of unemployment, to increase continuity of employment, and to aid in the stabilizing of consumption.

"Unemployment reserves can be built up which will take care of unemployment resulting from seasonal and other variations in the use of the products of an industry, from technical improvements in the methods of production and from the initial effects of cyclical unemployment." (Footnote omitted).

H.R. Rep. No. 858, 74th Cong., 1 Sess. 5 (1935). The misconduct provision, D.C. Code 1967, § 46–310(b), on the other hand is intended to prevent the dissipation of these funds due to disqualifying acts rather than lack of suitable job opportunity. In defining the scope of similar legislation, other state courts[8] have uniformly held that misconduct

"must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil de-

---

5. The supervisor was talking to someone on the telephone.

6. The appeals examiner did not conclude that failure to physically deliver the sick slip to the supervisor constituted misconduct.

7. The company representative testified this was normal procedure when confronted with a labor dispute.

8. *See* cases collected under Annot., 146 A.L.R. 243–45 (1943).

sign, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." 48 Am.Jur. Social Security, Unemployment Insurance, Etc., § 38 (1943) (footnotes omitted).

We agree with this construction.

It is not disputed that the employer in furthering its business interests may establish rules governing the conduct of its employees and performance of their assigned duties. Similarly, the breach of these rules may be grounds for dismissal and later, a finding of misconduct should the dismissed employee apply for unemployment compensation. But before such a rule may be the basis of disqualification for misconduct, it must be a reasonable one.[9] This is measured not in reference to the business interest of the employer but with reference to the statutory insurance purpose.[10] The types of conduct evidenced above, for which the misconduct penalty may be imposed, impute knowledge to the employee that should he proceed he will damage some legitimate interest of the employer for which he could be discharged.

In reviewing the events leading up to the adoption of this *ad hoc* rule which the employee assertedly violated, it is apparent that a labor dispute was the causative factor leading to its adoption and retrospective application. The employer wanted to verify that the employees were otherwise away from work. When petitioner left work on Friday no misconduct had occurred for he had complied with all the employer's rules then in existence with regard to sickness. It was only fortuitous that he happened to be absent the day before the labor dispute took place and that

this rule would be applied to him. He was not apprised of the rule, nor would his conduct on Friday impute knowledge to him that his compliance with the sick rule then in existence would not be enough to satisfy his employer. Indeed, had he known of the requirement, he could have gone to a dentist and obtained the necessary certificate. We hold that the retrospective application of the employer's rule requiring verification cannot be the basis for this misconduct finding.

As a final ground for dismissal, the employer cited the employee's participation in a demonstration on June 26, 1969. The appeals examiner concluded that "the employee participated in an unauthorized demonstration" and such was statutory misconduct. This was also in error.

There are no basic evidentiary findings which in any way support the ultimate finding that an "unauthorized demonstration" took place.[11] One can only speculate about its nature or purpose and against whom the demonstration was directed.

In addition, the statute requires that the misconduct occur in the course of the employee's most recent work.[12] We note that petitioner was in a suspended work status before his alleged misconduct took place. There is no finding on this record linking petitioner's participation in the demonstration with his work.

Apart from the lack of specific findings we observe that petitioner's testimony and the testimony of his employer at the hearings indicate that the demonstration had labor overtones. Congress provided a specific disqualification for benefits, D.C.Code 1967, § 46–310(f), where petitioner is un-

---

9. Gregory v. Anderson, 14 Wis.2d 130, 109 N.W.2d 675, 679 (1961).

10. Milwaukee Transformer Co. v. Indus. Comm'n., 22 Wis.2d 502, 126 N.W.2d 6, 12 (1964).

11. Woodridge Nursery School v. Jessup, D.C.App., 269 A.2d 199, 202 (1970); *see also* Allentuck v. District of Columbia Min. Wage & Indus. Safe. Bd., D.C.App., 261 A.2d 826, 833 (1969).

12. D.C.Code 1967, § 46–310(b).

employed as a result of a labor dispute. On remand, the Board should consider whether this section may be applicable to this situation.[13]

Reversed and remanded.

---

13. Nat'l Geographic Society v. District Unemployment Compensation Bd., D.C. Cir., 438 F.2d 154 (decided December 8, 1970).