**Cynthia M. GREEN, Petitioner,**

v.

**DISTRICT UNEMPLOYMENT COMPENSATION BOARD, Respondent.**

**No. 9425.**

District of Columbia Court of Appeals.

Submitted Aug. 21, 1975.

Decided Oct. 21, 1975.

---

6. *E. g., Ball v. United States,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).

John P. Sizemore, Washington, D.C., was on the brief for petitioner.

George A. Ross, Bill L. Smith, Robert J. Hallock and John L. Davis, Washington, D.C., were on the brief for respondent.

Before FICKLING, GALLAGHER and YEAGLEY, Associate Judges.

GALLAGHER, Associate Judge:

This is an appeal pursuant to D.C.Code 1973, § 46–312 (Supp. II, 1975) from an order of the District of Columbia Unemployment Compensation Board (hereinafter called the Board) denying unemployment compensation benefits due to petitioner's "misconduct" [1] in her most recent employment.

There are two issues here on appeal: (1) whether sufficient evidence exists in the record to support the finding of the Board and (2) whether the Board is legally empowered to base a misconduct disqualification pursuant to D.C.Code 1973, § 46–310(b) on conduct other than that alleged by the employer as his basis for the discharge. After a review of the record and the authorities cited, we hold that the disqualifying "misconduct" charged before the District Unemployment Compensation Board was not supported by substantial evidence.[2] Additionally, we hold that the Board erroneously based its finding of "misconduct" pursuant to D.C.Code 1973, § 46–310(b) on conduct substantially different from that which caused the initial discharge.

Petitioner Cynthia Green worked as a personal secretary to Mr. Enrique Lopez, Jr., at the Federal National Mortgage Association (F.N.M.A.) from August 21, 1972 until November 8, 1974, when she was discharged. Mr. Lopez testified that this discharge resulted from the belief that petitioner had falsified overtime records. This allegation of falsification arose from a security investigation authorized by the F.N.M.A. to determine the cause in the discrepancy between overtime hours recorded and hours logged in the security register. Ms. Green's testimony was that the discrepancy that existed as to her approved overtime hours and the hours logged for her in the security register resulted from overtime work she had done at home. Mr. Lopez stated that she was an "exceptional" secretary and that he placed heavy reliance on her in evaluating the office's daily need for overtime so much so that "Ms Green could put her name in the request for overtime and I would sign it without question." As to the discrepancy issue, he testified that he believed petitioner actually did the claimed overtime work although he was not then aware that she was taking overtime work home.

On these facts, the Appeals Examiner concluded that petitioner had been dis-

1. D.C.Code 1973, § 46–310(b).

2. It should be borne in mind that this court is not a fact finder as to what conduct transpired in the employing agency but, rather, must confine its review to the record made before the District Unemployment Compensation Board, including the Board's findings based upon that evidence.

charged for misconduct, stating that "[W]hile the Examiner has no reason to believe that the claimant did not perform the work at home that she said she performed this does not alter the fact that she acted unreasonably and outside the scope of normal business procedures . . . when she followed this home work procedure without telling her supervisor where she was doing the work." In affirming the Appeals Examiner, the Board held that "[T]he evidence in this appeal clearly shows that the claimant deliberately or unduly failed to follow a well-known employer policy involving overtime work." It was on this basis and not that petitioner had falsified the records that the Board found "misconduct" sufficient to warrant disqualification of benefits under D.C.Code 1973, § 46–310(b). This appeal followed.

██ As to the first issue, it is helpful to state initially that the scope of our review here "is limited to questions of law and . . . to a determination of whether or not the findings of the compen-

sation authorities are supported by competent evidence."[3] The burden of proving petitioner's misconduct in unemployment compensation cases is on the employer. *Simmons v. District Unemployment Compensation Bd.*, D.C.App., 292 A.2d 797, 800 (1972). That burden has not been met here. The Board, in its decision, found petitioner's "misconduct," which disqualified her from unemployment benefits for five weeks, ensued from her failure to follow "a well-known employer policy involving overtime work."[4] Significantly, however, Mr. Barker, who was an employer witness, suggested in his testimony that a procedure requiring such overtime permission was not initiated until *after* the decision to terminate petitioner's employment had been reached.[5] At the very least for an employment policy to be contravened, its existence must be made known to the employees beforehand. We are thus unable to find substantial evidence either to support the Board's finding regarding the existence at the time in question of a policy against doing overtime work at home at all or a

---

3. *Coulter v. Commonwealth, Unemp. Comp. Bd. of Rev.*, 16 Pa.Cmwlth. 462, 332 A.2d 876 (1975); D.C.Code 1973, § 1–1510; *see also Wallace v. District Unemployment Compensation Bd.*, D.C.App., 294 A.2d 177, 178–79 (1972), where we have similarly held, regarding an unemployment compensation case, that the "findings and conclusions of administrative agencies are to be set aside on judicial review if they are found to be 'unsupported by substantial evidence in the record of the proceedings before the court.'"

4. The following is pertinent testimony which points up the trust petitioner's supervisor placed in her and undermines the finding that it would be required of petitioner to seek her supervisor's approval before doing overtime work either at the office or at home:

She did have my approval that if for any reason she found that something had to be done in my office, that I did sanction her going ahead and working that night even though the overtime lists had gone out, the request for approval . . . if something came up at a quarter of 5, she had my approval to stay and take care of that. She would also recognize that the

next morning I would do something about adding her to the list and putting her name on the report of having had worked. This also applied to times when I was out of the office for a period of time. I do do some traveling and on occasion I'm gone a week, a week and a half, and this is the overtime that we have.

5. The testimony was:

Mr. Barker: Well, the reason that we found out that, *that a few employees who were doing work at home were*, was because of me checking the register where we found out they hadn't signed in and signed out on a particular day. And we weren't, I wasn't aware for example that they were taking work home.

Lady: *How far back did this go?*

Mr. Barker: *Was during this period of time*, that we, we found that there were a few employees that had been given work to take home by their supervisor, and were doing it.

Lady: Has the procedure *now* been changed?

Mr. Barker: Yes it has. (Emphasis added.)

policy requiring prior approval of such work by one's supervisor.[6]

■■ Secondly, petitioner contends that the Board erred in finding the ground for disqualifying misconduct on a rationale other than the basis for the discharge used by the employer. We agree and find the Board's action erroneous as a matter of law. The District of Columbia Code 1973, § 46–310(b) provides in relevant part that "[a]n individual who has been *discharged for misconduct* occurring in the course of his most recent work proved to the satisfaction of the Board shall not be eligible for benefits . . . ." (Emphasis added.) Petitioner was discharged on the basis that she had falsified overtime records according herself more hours than she actually worked. The Board, however, based its finding of "misconduct" on grounds that petitioner violated "a well-known employer policy involving overtime work." We hold that a finding of misconduct by the Board pursuant to D.C.Code 1973, § 46–310(b) must be based fundamentally on the reasons specified by the employer for the discharge.[7] *Hawkins v. Leach,* 115 Ohio App. 259, 185 N.E.2d 36 (Ohio App. 1961). There Mr. Hawkins was discharged by the employer for "allegedly reporting for work under the influence of alcohol." The referee held that "there was a failure of proof that Hawkins was under the influence of alcohol." The Board nevertheless denied claimant unemployment benefits apparently on the theory that the employee left work without authorization and was therefore guilty of misconduct. The Ohio Court of Appeals reversed the Board holding:

> Both appellees (the Board and the employer) have suggested that the board of review was entitled to reject the reason given by the employer as the basis of discharge and make an *independent determination.* The contention appears to be that even if there is insufficient evidence to prove that appellant was under the influence, still there are other grounds of record which would justify discharge for cause . . . We think . . . the ultimate fact to be determined from the evidence is the reason or reasons the employer did in fact discharge

---

6. Even if such a policy did exist, however, that discovery would not end our analysis. We recently upheld in *Hickenbottom v. District of Columbia,* D.C.App., 273 A.2d 475, 478 (1971) that it was clearly within an employer's prerogative to establish rules governing the conduct of his employees. We were careful to point out, however, that " . . . before such a rule may be the basis of disqualification for misconduct, it must be a *reasonable* one." (Emphasis added.) In the instant case, the asserted "company rule" which was violated and thus formed the basis of petitioner's "misconduct" was performance of paid overtime work at home, without the supervisor's approval. This court in *Hickenbottom,* adopted the standard definition of disqualifying misconduct which holds that the conduct:

> "must be an act of *wanton* or *wilful disregard* of the employer's interest, a *deliberate violation* of the employer's rules, a disregard of standards of behavior which the employer *has the right to expect* of his employee, or *negligence in such degree or* recurrence as to manifest culpability, wrongful intent, or *evil design,* or show an intentional and *substantial disregard* of the

employer's interest or of the employee's duties and obligations to the employer." 48 Am.Jur. Social Security, Unemployment Insurance, Etc., § 38 (1943) (footnotes omitted). *Id.* at 477–78. (Emphasis added.)

The alleged "company rule" which formed the basis for the "misconduct" finding in the case at bar falls short of this standard. Significantly, Mr. Lopez actually testified that under the circumstances present he would not have discharged this petitioner on any ground short of falsification of the records.

7. See Kempfer, *Disqualifications for Voluntary Leaving and Misconduct,* 55 Yale L.J. 147, 160–62 (1945). There she lists and analyzes four findings that must be made by the Board to determine that claimant has truly been discharged for disqualifying misconduct. They are:

> "(1) that the claimant did the act alleged;
> (2) that the claimant was discharged;
> (3) that the act was the reason for the discharge; and,
> (4) that the act was 'misconduct connected with the work.'"

the employee. If that reason constitutes just cause, compensation is to be denied. The existence of grounds upon which the employee *might have been discharged is immaterial if they were not in fact the grounds of discharge.* (Emphasis added.) *Id.* at 44.

Here, the employer representative stated to the Board that he would not have discharged petitioner for any reason other than falsifying records.[8] Accordingly, the Board should not now make an independent judgment that other grounds exist sufficient to support a finding of misconduct which, in the Board's opinion, should be cause for the employer to discharge the employee and deny unemployment benefits on that ground. Here the employer representative specifically disavowed the Board's ground as being a basis for dismissal.

*Reversed.*

8. The following question was propounded to petitioner's supervisor at the hearing:
   Q. And you can't, do you know of any, of any ground on which you would recommend her termination other than the misconduct involving the time and attendance and . . . . reports?
   A. I would not.