**Clarence WILLIAMS, Jr., Petitioner,**

v.

**DISTRICT UNEMPLOYMENT COMPENSATION BOARD, Respondent.**

**No. 12320.**

District of Columbia Court of Appeals.

Submitted Oct. 25, 1977.

Decided Feb. 17, 1978.

---

Clarence Williams, Jr., pro se.

Russell L. Carter, Bill L. Smith, Robert J. Hallock, Washington, D. C., and Earl S. Vass, Jr., Richmond, Va., were on the brief for appellee.

Before HARRIS, MACK and FERREN, Associate Judges.

FERREN, Associate Judge:

The petitioner, Clarence Williams, Jr., was discharged as a meter reader by Potomac Electric Power Co. He seeks review of a Final Decision by the District Unemployment Compensation Board (the "Board") that disqualified him, on the basis of misconduct, from receiving unemployment benefits for a period of five weeks. The Board affirmed the finding of the Appeals Examiner that Mr. Williams had thrown his flashlight through the glass storm door of a customer's home without justification, in violation of § 10(b) of the District Unemployment Compensation Act (the "Act"), D.C.Code 1973, § 46–310(b).[1] Because of mitigating circumstances, however, the Board reduced the Examiner's proposed disqualification of Mr. Williams from eight weeks to five weeks. We affirm.

---

1. (b) An individual who has been discharged for misconduct occurring in the course of his most recent work proved to the satisfaction of the Board shall not be eligible for benefits with respect to the week in which such discharge occurred and for not less than four nor more than nine weeks of consecutive unemployment immediately following such week, as determined by the Board in such case according to the seriousness of the misconduct. In addition such individual's total benefit amount shall be reduced in a sum equal to the number of weeks of disqualification multiplied by his weekly benefit amount. [D.C.Code 1973, § 46–310(b).]

## I.

Petitioner Williams testified before the Appeals Examiner that on March 11, 1977, a customer called him from across the street to read her meter. (She had not been at home when he went there initially.) According to Mr. Williams, the customer straightaway spoke to him in a derogatory manner and, as he entered the house, failed to restrain her growling dog enough to eliminate his apprehension. An argument developed over the dog whereupon the customer, he said, slurred his mother. Incensed by that comment, Mr. Williams abruptly left the customer's home without reading the meter. Once outside, he threw his flashlight at the storm door and broke three panes of glass (without, he said, endangering the customer). Mr. Williams then called his supervisor, Mr. Griffin, to report the incident.

Mr. Griffin testified that he had responded to Mr. Williams' call by going to the neighborhood, speaking with Mr. Williams to get his story about what had just taken place, and then visiting with the customer. According to Mr. Griffin, the customer failed to corroborate Mr. Williams' version of the events in three important respects. First, she claimed that Mr. Williams had called her a "bitch" before she responded with a slur against his mother. Second, she did not mention the incident with the dog. (Nor did Mr. Griffin raise that incident with her because, he said, Mr. Williams had not mentioned the dog to him when he arrived on the scene.) Third, the customer claimed that she had been standing behind the storm door when Mr. Williams threw the flashlight, that the flashlight had broken the glass at her eye level, but that she had not been injured.

The Appeals Examiner's report, adopted by the Board, included the following findings of fact:

[1] "The customer made a slurring reference to [claimant's] mother" [there was no finding as to whether this occurred before or after Mr. Williams insulted the customer];

[2] "The claimant admitted throwing his flashlight through the glass of the storm door",[2]

[3] "The customer was standing behind the storm door at the time and the three panels of the door near eye level were broken";

[4] "Although the claimant alleged that the customer's dog made an attempt to bite him at the time, the dog at the time of the incident was standing behind the door";

[5] "The claimant's supervisor [Mr. Griffin] repeatedly stated that the claimant failed to indicate that he was being attacked by any such dog during the course of the claimant's explanation to his supervisor shortly after the incident."

The first two findings are undisputed. Because of hearsay problems, however, the other facts emerge from the record with less certainty.[3]

As to the third finding, we must accept the customer's hearsay allegation (through Mr. Griffin) that she was standing behind the door at the time the glass was broken, for when confronted with that testimony Mr. Williams did not deny it. *Wallace v. District Unemployment Compensation Bd.,* D.C.App., 294 A.2d 177, 179–80 (1972). Mr. Williams did deny the customer's claim that he had broken the glass door at her eye level, but on the basis of personal

---

2. Mr. Williams' signed report of the incident, as part of the Claim Record Card, states in part: "The dog made an attempt to bite me but in defending myself with my flashlight I accidentally broke the customer's window." This statement varies from Mr. Williams' later testimony before the Appeals Examiner. There, he admitted that he had thrown the flashlight at the storm door. Moreover, in his letter to this court in support of his petition for review, Mr.

Williams reinforced his testimony: "I have never said that I didn't throw the flashlight."

3. While hearsay is admissible, its probative value, absent corroboration, may be minimal in a sharply contested factual dispute. *See General Railway Signal Co. v. District Unemployment Compensation Bd.,* D.C.App., 354 A.2d 529, 531 (1976); *Wallace v. District Unemployment Compensation Bd.,* D.C.App., 294 A.2d 177, 179 (1972).

observation, however, Mr. Griffin corroborated that fact at the hearing. We must therefore accept the Board's finding, for it was not entirely based on hearsay. *Id.*

The fourth finding, with respect to the customer's dog, provides the sharpest dispute of all. Mr. Williams' written report and testimony give the threat from the dog significant play. The customer's hearsay statement, coupled with Mr. Griffin's report of his initial conversation with Mr. Williams, would have one believe that the story about the dog was insignificant if not fabricated. Without resolving all that happened here—for the Board did not resolve it—we must accept the Board's finding that the dog was behind the closed storm door at the time Mr. Williams threw the flashlight. Mr. Williams never denied this. *Id.* Nor, in the end, did he claim that he had thrown the flashlight because of the dog. Although that basis for his action was alleged in his written report of the incident (note 2, *supra*), he stated at the hearing that he had thrown the. flashlight because of the cus- tomer's slur against his mother.[4]

Finally, as to the fifth finding, the. Board could believe Mr. Griffin's testimony that Mr. Williams had not initially mentioned the dog—a fact probative of the significance to be accorded Mr. Williams' version of the dog's role in the incident.

We therefore accept the Board's findings of fact. We now must determine whether, on the basis of these facts, Mr. Williams was involved in the type of misconduct that would justify disqualification from unemployment benefits pursuant to § 10(b).

## II.

Our court has held that a discharge from employment for violation of an employer's rules, or for any other type of alleged misconduct, does not constitute "misconduct" per se for purposes of § 10(b).

*Hickenbottom v. District of Columbia Unemployment Compensation Bd.,* D.C.App., 273 A.2d 475 (1971). In order to disqualify a claimant from benefits, the basis for discharge must be "reasonable," considered "not in reference to the business interest of the employer but with reference to the statutory insurance purpose," *id.* at 478, which "is to protect employees against economic dependency caused by temporary unemployment and to reduce the necessity of relief or other welfare programs." *Von Stauffenberg v. District Unemployment Compensation Bd.,* D.C.App., 269 A.2d 110, 111 (1970) (footnote omitted), *aff'd,* 148 U.S.App.D.C. 104, 459 F.2d 1128 (1972). More particularly, according to *Hickenbottom,* misconduct

> "must be [1] an act of wanton or wilful disregard of the employer's interest, [2] a deliberate violation of the employer's rules, [3] *a disregard of standards of behavior which the employer has the right to expect of his employee,* or [4] negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." [*Id.* at 477–78; citation omitted; emphasis added.]

These four standards are set forth in the disjunctive; any will justify disqualification for misconduct. *Marshall v. District Unemployment Compensation Bd.,* D.C.App., 377 A.2d 429 (1977). Implied in these standards, however, is a requirement that the employee be on notice "that should he proceed he will damage some legitimate interest of the employer for which he could be discharged." *Hickenbottom v. District of Columbia Unemployment Compensation Bd., supra* at 478. *See Green v. District Unemployment Compensation Bd.,* D.C. App., 346 A.2d 252, 255 (1975).

Here, we believe that Mr. Williams could have been expected to know that

4.   Examiner: All right, okay—the dog was in the door and then what caused you to throw the flashlight?
Claimant: 'Cause she cursed me.
Examiner: Well what did she say to you?

Claimant: She said something about—she called my mother some kind of a bitch and I just went off—I just—like—it's just I don't know—I don't talk about people's mothers and I don't want them to talk about mine.

throwing a flashlight through a customer's glass storm door, with personal injury a possible consequence, amounted to " 'disregard of standards of behavior which the employer has the right to expect of his employee.' " *Hickenbottom v. District of Columbia Unemployment Compensation Bd., supra* at 477. We hold that unless Mr. Williams can show legal justification, his actions amounted to misconduct proscribed by § 10(b).

### III.

■ Mr. Williams' defense is provocation. If proved legally adequate, it would excuse the alleged misconduct and require reversal of disqualification from benefits. *See Georgia-Pacific Corp. v. Employment Div.*, 21 Or.App. 135, 533 P.2d 829 (1975).[5] We therefore must consider, pursuant to D.C. Code 1973, § 46–311(f), whether there is evidence to support the conclusion of the Appeals Examiner and the Board that "there was no legally adequate provocation which would in any way have justified the claimant in throwing his flashlight through a glass door at or near the customer."

There were only two relevant events: the customer's admitted slur against Mr. Williams' mother, and the customer's alleged refusal to harness her dog properly.[6] At common law, in the absence of a special statute, no provocative acts or words—un-less accompanied by an overt act of hostility—would justify an assault, no matter how offensive or exasperating the acts or words were. *See, e. g., Hubbard v. Perlie*, 25 App.D.C. 477 (1905); *Mangus v. Miller*, 35 Colo.App. 335, 535 P.2d 219 (1975); *Cohen v. Peoples*, 140 Ind.App. 353, 220 N.E.2d 665 (1966). Courts have applied this principle in the unemployment compensation context when evaluating whether an employee was properly discharged for misconduct. *Beville v. Commonwealth Unemployment Compensation Bd. of Review*, 15 Pa. Cmwlth. 371, 327 A.2d 197 (1974) (disqualification for misconduct affirmed, where claimant assaulted a fellow employee who had thrown a company tally sheet, showing discrepancies, on the desk in an accusatory manner and said "okay, you take care of it"); *Georgia-Pacific Corp. v. Employment Div., supra* (refusal to disqualify for misconduct affirmed, where claimant struck a fellow employee who had hit him first; claimant had initiated the hostile chain of events by calling the other employee an obscene name); *Thorne v. Unemployment Compensation Bd. of Review*, 167 Pa.Super. 572, 76 A.2d 485 (1950) (disqualification for misconduct upheld, even if claimant had assaulted the company's superintendent in response to abusive words).

■ Accordingly, we conclude that Mr. Williams' action in throwing his flashlight

---

**5.** Provocation is to be distinguished from mitigation, which involves circumstances that do not excuse misconduct but explain it in a way that justifies a lesser disqualification than otherwise would be the case. *See* Part IV, *infra.*

**6.** Mr. Williams cites another incident. During a week of vacation prior to February 28, 1977, the date he was scheduled to return to work, he developed serious automobile trouble near Montgomery, Alabama. Because of the required repairs, Mr. Williams was unable to return to the Washington, D.C., area until March 4. He testified that he had called his employer on the morning of February 28 to explain why he would not be able to return for several days. He said that one of his superiors in the meter-reading office, Mr. Wells, replied that he would have to call in every day; otherwise, he would be carried "AWOL." Mr. Williams was offended by what he considered an unreasonable requirement, but he reported in long distance the next day. He did not do so again because of the expense.

At the hearing, Mr. Williams complained about this treatment by Mr. Wells. Representatives from PEPCO did not deny Mr. Williams' allegations about attempted enforcement of a company "AWOL" policy. Nevertheless, we do not believe that this policy, whether reasonable or not under the circumstances, amounts to the kind of provocation that would justify the later, unrelated flashlight-throwing episode. Mr. Williams' complaint about Mr. Wells was a matter to be taken up, with the help of the union, through the normal grievance mechanism. The record reflects that at least one grievance hearing took place with union and company representatives present, after which Mr. Williams' employment was terminated. Mr. Williams expressed displeasure with that process, claiming that he had been "railroaded."

at the customer's glass storm door at eye level, while she was standing behind it, was not justified by the first claimed ground for provocation: the customer's slur. Even if, as Mr. Williams claims, the customer insulted him and his mother first, verbal attacks cannot justify retaliatory action threatening physical injury.

 As to the second claimed basis for provocation, the evidence does not show that the customer's dog attacked Mr. Williams, or that he threw the flashlight to protect himself against the dog. The dog was behind the glass door when the flashlight smashed it. Consequently, the incident with the dog, even as alleged by Mr. Williams, did not amount to a degree of provocation that justified his throwing the flashlight after he was safely beyond the closed door.

We therefore affirm the Board's conclusion; there was no "legally adequate provocation" that justified Mr. Williams' conduct.

## IV.

We turn now to mitigation. In a letter (in lieu of a brief) to our court, Mr. Williams admitted:

> Quite possibly, I over-reacted on March 11, I am not going to attempt to deny this; nor have I ever attempted to deny this.

He argues, nevertheless, that he was prevented from telling his entire story before the Appeals Examiner, that his disqualification was excessive, and that he is entitled, as a result, to greater consideration of the mitigating circumstances.

The record shows that the Board, in reducing the proposed disqualification from eight weeks to five, considered not only the record before the Appeals Examiner—including Mr. Williams' account of the frustrating experiences with his automobile in Alabama (note 6, *supra*)—but also a letter Mr. Williams wrote to the Board after the hearing to describe additional mitigating factors which he had not been allowed to bring out at the hearing. Included in that letter, for example, were accounts of two earlier experiences as a meter reader when he had been severely bitten by a bulldog and a German shepherd. Thus, the record before the Board was complete as to all the mitigating facts alleged by Mr. Williams.

It is important to note that the Board, after reviewing the Appeals Examiner's report *and* Mr. Williams' post-hearing letter, did reduce the recommended disqualification to the minimum required for misconduct. *See* D.C.Code 1973, § 46–310(b), at note 1, *supra*. Under the statute, disqualification, upon a finding of misconduct, must result in a loss of "benefits with respect to the week in which such discharge occurred and for not less than four nor more than nine weeks of consecutive unemployment immediately following such week." *Id.* Consequently, even if we accept as true Mr. Williams' own version of the incident with the customer, as well as all the other mitigating circumstances, we must find that the Board, acting properly within its discretion, 18 DCRR § 301.2(c), credited Mr. Williams as much as was legally possible for the considerations he called to the Board's attention.

We affirm the decision of the Board. *So Ordered.*