Herbert R. JONES, Petitioner,

v.

DISTRICT OF COLUMBIA UNEMPLOY-
MENT COMPENSATION
BOARD, Respondent.

No. 13145.

District of Columbia Court of Appeals.

Argued Oct. 5, 1978.

Decided Nov. 20, 1978.

---

Dalton Howard, with whom Wanda D. Foster, Washington, D. C., was on the brief, for petitioner.

D. Kevin Dugan, with whom Russell L. Carter, Bill L. Smith, and Norma Denise Wilson, Washington, D. C., were on the brief, for respondent.

Before GALLAGHER and FERREN, Associate Judges, and PAIR, Associate Judge, Retired.

FERREN, Associate Judge:

The petitioner, Herbert R. Jones, seeks review of a Final Decision of the District Unemployment Compensation Board (the Board) disqualifying him from receiving unemployment benefits for eight weeks on the ground that he had been discharged for "misconduct," within the meaning of the District of Columbia Unemployment Compensation Act. D.C.Code 1973, § 46–310(b).[1] Petitioner asserts that (1) his actions in leaving work early, after a warning that this would constitute abandonment of his job, did not amount to misconduct within the meaning of the statute, and that (2) the appeals examiner's failure to grant a continuance to obtain the presence of subpoenaed witnesses, his refusal to permit examination of petitioner's personnel file, and his decision not to sequester the witnesses deprived petitioner of his statutory right to a fair hearing, as well as his consti-

tutional right to due process. Because the evidence does not support an essential, threshold finding that the employer discharged petitioner for abandoning his job, we reverse and remand for further proceedings.

### I.

On May 11, 1977, the petitioner, a trashman employed by the Greater Southeast Community Hospital, entered the office of Fred Williams, his supervisor, told Williams that he was putting too much pressure on petitioner, and signed off the job four hours before the end of his shift. Mr. Williams informed petitioner that if he signed out, he would be abandoning his job. According to Mr. Williams and a witness to the incident, petitioner responded that "he would cut [Mr. Williams'] throat" if he stayed. Petitioner then left. The next day, the hospital discharged petitioner for abandoning his job and threatening his supervisor.

At the hearing to determine petitioner's right to receive unemployment compensation, the appeals examiner found the petitioner had abandoned his job after being warned by his supervisor that he did not have permission to leave. The examiner determined that petitioner's behavior "exhibited a wilful disregard of the employer's legitimate business interest and constitute[d] a breach of reasonable standards of behavior an employer has the right to expect from its employees." He concluded that petitioner had been discharged for acts constituting "misconduct" within the meaning of the statute. The examiner made no findings concerning petitioner's alleged threat to his supervisor, explaining that the record was sufficient to sustain a finding of misconduct even if petitioner had not threatened Mr. Williams.

---

1. D.C.Code 1973, § 46–310(b) provides:

    An individual who has been discharged for misconduct occurring in the course of his most recent work proved to the satisfaction of the Board shall not be eligible for benefits with respect to the week in which such discharge occurred and for not less than four nor more than nine weeks of consecutive

    unemployment immediately following such week, as determined by the Board in such case according to the seriousness of the misconduct. In addition such individual's total benefit amount shall be reduced in a sum equal to the number of weeks of disqualification multiplied by his weekly benefit amount.

The Board affirmed the appeals examiner's decision, concluding that it was supported by the evidence and that no prejudicial error had occurred.

## II.

Initially, we must determine whether the Board was correct in concluding that the employer carried its burden of proving that petitioner's action in leaving work four hours early, in the face of a supervisor's warning that he would be abandoning his job if he left, constituted "misconduct" within the meaning of § 46–310(b). *See Hawkins v. District of Columbia Unemployment Compensation Board*, D.C.App., 381 A.2d 619, 622 (1977) (per curiam).

We have held that an employee discharged for misconduct, based on the employer's concept of that term, is not necessarily guilty of "misconduct" under the statute. *See Williams v. District Unemployment Compensation Board*, D.C.App., 383 A.2d 345, 349 (1978); *Hickenbottom v. District of Columbia Unemployment Compensation Board*, D.C.App., 273 A.2d 475, 478 (1971). In order to disqualify a claimant from benefits, the Board must find that the basis for his discharge was reasonable when considered with reference to the purpose of the Unemployment Compensation Act, namely to protect employees against economic dependency caused by temporary unemployment and to reduce the necessity of other welfare programs. *See Williams, supra* at 349; *Hickenbottom, supra* at 478; *Von Stauffenberg v. District Unemployment Compensation Board*, D.C.App., 269 A.2d 110, 111 (1970), *aff'd per curiam*, 148 U.S.App.D.C. 104, 459 F.2d 1128 (1972). Consistent with this purpose, the misconduct provision is intended to prevent the dissipation of funds by denying benefits to those who are unemployed through their own disqualifying act rather than the unavailability of suitable job opportunities. *See Hickenbottom, supra* at 477. This court accordingly has determined that an employee should be disqualified from benefits if—but only if—his misconduct is

[1] an act of wanton or wilful disregard of the employer's interest, [2] a deliberate violation of the employer's rules, [3] a disregard of standards of behavior which the employer has the right to expect of his employee, or [4] negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer. [*Id.* at 477–78 (citation omitted).]

There are, moreover, two other prerequisites to denial of benefits. First, the employee must be on notice that if he should proceed with his conduct, "he will damage some legitimate interest of the employer for which he could be discharged." *See Williams, supra* at 349; *Hickenbottom, supra* at 478. Second, "a finding of misconduct by the Board pursuant to D.C.Code 1973, § 46–310(b) must be based fundamentally on the reasons specified by the employer for the discharge." *Green v. District Unemployment Compensation Board*, D.C. App., 346 A.2d 252, 256 (1975). The Board cannot reject the employer's rationale and yet deny benefits on another misconduct theory independent of the employer's own determination.

This case is complicated by the fact that according to petitioner's supervisor (Mr. Williams), the employer discharged petitioner for two reasons—his alleged threat to Williams and abandonment of the job. Because several of petitioner's subpoenaed witnesses on the threat issue did not appear, the appeals examiner decided the case solely on the ground that job abandonment was misconduct enough to justify the discharge. This conclusion, however, presupposes that the employer would have discharged petitioner for job abandonment alone—and in effect did; *i. e.*, that the two reasons for discharge were alternative, not compounded, grounds. The critical inquiry, therefore, is whether the record supports the conclusions that (1) petitioner was on notice that he could be discharged for abandoning his job, *see Williams, supra* at 349;

*Hickenbottom, supra* at 478, and that (2) in fact the claimant was discharged for abandoning his job. *See Green, supra* at 256–57.

■ As to the first, "notice" issue, the employer issued an employee handbook containing policies and procedures on "Discharge After Completion of Probationary Period."[2] Pursuant to § 2.b. of the handbook, discharge without warning is permitted, with one or two weeks' severance pay, "[i]f [an employee's] department head feels immediate discharge would be in the best interest of the Hospital." *See* note 2 *supra.* Section 2.c. authorizes discharge without warning and without pay in situations in which "the presence of an employee jeopardizes the welfare of the patients, property or other employees"; *e. g.*, when an employee commits an "assault on Hospital property." *See* note 2 *supra.* It appears, therefore, that discharge for job abandonment is at least consistent with § 2.b., if not § 2.c.[3]

The record also shows that petitioner, in leaving work four hours early, defied his supervisor's warning that such an action would constitute abandonment of his job. Petitioner, in fact, concedes this. Coupled with the employee's handbook, the supervisor's warning was sufficient notice to petitioner that leaving the job without permission could constitute misconduct justifying discharge. *See Williams, supra* at 349–50. In these circumstances, petitioner should have recognized that his leaving was in derogation of his employer's legitimate business interest, constituting a breach of the standards of behavior that his employer had a right to expect. *See Hickenbottom, supra* at 477–78. The petitioner's conduct accordingly could be sufficient to justify his temporary disqualification from unemployment compensation benefits. *See Colvin v. District Unemployment Compensation Board*, D.C.App., 306 A.2d 662, 664 (1973) (petitioner's action in cutting short his workdays to attend to personal affairs without permission and despite warnings reveals a breach of petitioner's contractual duty to devote his entire time, attention, and energies to his employment and establishes misconduct as a matter of law); *Williamson Co. v. Review Board of Indiana Employment Security Division*, 145 Ind. App. 266, 250 N.E.2d 612, 618 (1969) (petitioner's action in leaving work after being warned not to do so was sufficient to justify suspension of unemployment benefits); *Palko v. Delson Candy Co.*, 29 A.D.2d 600, 600, 285 N.Y.S.2d 345, 346 (1967) (per curiam) (same); *Cade v. Unemployment Compensation Board of Review*, 191 Pa.Super.C. 3, 5, 155 A.2d 459, 460 (1959) (same).

■ Having determined that petitioner had sufficient notice to justify his discharge and consequent disqualification from unemployment compensation benefits, we must next consider whether the employer in fact discharged petitioner for job abandonment. *See Green, supra.* If the employer cannot be said to have discharged him for that

---

**2.** This section of the handbook provides as follows:

[2] a.  With Warning:
If your department head believes your work unsatisfactory, you will be warned and counselled as to what improvement is expected and given a specific date by which you must meet Hospital requirements or be discharged. Such discharge may be appealed through the Hospital Grievance Procedure.

[2] b.  With Pay in Lieu of Warning:
If your department head feels immediate discharge would be in the best interest of the Hospital, you will be given 2 weeks pay in lieu of notice. (1 weeks pay if you have less than 6 month's service.)

[2] c.  Without Warning and Without Pay:
When the presence of an employee jeopardizes the welfare of the patients, property or other employees, the employee will be discharged without counselling, warning or pay in lieu of warning. These violations include but are not limited to narcotics violations, proven theft or fraud, assault on Hospital property, intoxication on duty, gross negligence, carrying a weapon, or off-duty misconduct which may reflect adversely on the Hospital.

**3.** If, however, the employer had a policy that a first-offender who leaves work early without permission shall be counseled rather than discharged, the employer's termination of that employee in violation of the policy could not be a discharge for misconduct under § 46–310(b), for the employee was on notice that he would be counseled for such conduct, not fired.

reason but instead required both the alleged threat and the abandonment before a "critical mass" justifying discharge was reached, then the Board must be said to have made an independent—and thus invalid—misconduct determination. *See id.*

We cannot say on this record that the employer did—or did not—discharge petitioner "for abandoning his job," as the Board found. The Claim Record Card refers only to an alleged drinking problem and the alleged threat. The Determination of the Claims Deputy states that "you were discharged for threatening to cut your supervisor's throat," without mention of job abandonment. The record of the hearing before the appeals examiner shows the following colloquy between the employer's attorney and Mr. Williams:

> Seig: Was the claimant's dismissal because of the threat that he made to you and for leaving early. . . .
>
> Williams: Yes, for the misconduct.
>
> Examiner: You discharged the claimant for making the threat or did you discharge him for leaving his job without permission?
>
> Williams: . . . .
>
> Examiner: So that was the primary reason you dismissed him?
>
> Williams: And leaving his job.

No other evidence of record fairly can be said to establish that job abandonment was an independent ground for the discharge.

There simply is not enough evidence, therefore, from which to conclude that job abandonment was an independent ground for discharge. We accordingly hold that the Board's conclusion that "the claimant was discharged for abandoning his job" is not—on this record—supported by the evidence, and that the case must be remanded to the Board.

All this is not to say that petitioner is entitled to the benefits claimed. Remand is

dictated as much by the appeals examiner's decision not to reach the threat issue (because of absent witnesses) as by his failure to determine whether job abandonment was an independent reason for petitioner's discharge. This is a case where the proceeding has been foreshortened by the Board; it is not one which has run its course with a failure of employer proof. It would be inappropriate, therefore, to preclude, on remand, a reopening of the proceedings to permit a finding on the alleged "threat" aspect of the employer's basis for the discharge, as well as on the issue of job abandonment.[4] Fairness, in fact, requires that once the proceeding has been reopened, the Board should be willing to accept additional, relevant evidence on all issues.

At the same time, judicial economy suggests that we rule now on those other aspects of petitioner's claim that presumably will confront the parties on remand.

### III.

■ Petitioner maintains that he was legally justified in leaving because Mr. Williams was harassing him and because he had accrued leave. Even if petitioner were discharged solely for job abandonment, these assertions have no merit here. Petitioner's charge of harassment was based primarily on his claim that Mr. Williams gave him too much work. There is substantial evidence in the record, however, supporting the examiner's determination that petitioner was not assigned duties inconsistent with his job description and that, accordingly, there was insufficient evidence to justify a conclusion that he had been harassed. We do not perceive legally adequate provocation sufficient to excuse petitioner's leaving. *See Williams, supra* at 350–51.

■ In addition, absent evidence of record that the employer's leave policy entitled

---

4. Because the employer's contribution to the unemployment compensation fund is affected by the claims experience of its employees, *see* D.C.Code 1973, § 46–303, the employer has an interest in this proceeding which cannot, in fairness, be compromised by the Board's conduct of an incomplete hearing. Were this not the case, the Board's failure to develop evidence sufficient to support a finding of misconduct would end the matter at this point in petitioner's favor.

an employee to take leave under the circumstances here, virtually without notice and contrary to the supervisor's instruction, we cannot fault the Board's conclusion that it was unreasonable for petitioner to assume that his accrued leave justified his conduct in leaving early.[5]

We do not preclude the Board's receipt of additional evidence from petitioner, on remand, which would establish a case legally justifying petitioner's action in leaving the job four hours early. On this record, however, petitioner has failed to demonstrate such a justification.

## IV.

Petitioner also asserts that he was denied the right to a fair hearing and due process of law by the appeals examiner's failure (1) to grant a continuance in order to permit petitioner to obtain subpoenaed witnesses, (2) to permit petitioner to examine documents in his personnel file, and (3) to sequester the witnesses.

■ Petitioner is correct in asserting that welfare benefits are a matter of statutory entitlement and that persons qualified to receive such benefits are entitled to due process. *Hawkins, supra* at 623. Moreover, the Unemployment Compensation Act itself requires that parties be afforded a reasonable opportunity for a fair hearing. D.C. Code 1973, § 46–311(e). Such hearings must conform with the requirements of the District of Columbia Administrative Procedure Act, D.C.Code 1973, § 1–1501 *et seq.; see Hawkins, supra* at 623, which gives each party the right to present both direct and rebuttal evidence. D.C.Code 1978 Supp., § 1–1509(b).

■ Petitioner's first claim of error, the examiner's failure to grant a continuance to obtain the presence of subpoenaed witnesses, is moot in view of the remand.[6] As to the other claims of error, we conclude that none denied petitioner the requisite fair hearing.

■ Petitioner's second allegation is that the hospital's failure to comply with a subpoena duces tecum prevented the examiner from hearing all the evidence and thus denied petitioner a fair hearing. Contrary to petitioner's assertion, however, the record demonstrates that the hospital in fact complied with the subpoena by bringing its files to the hearing.[7] The examiner denied petitioner's request to examine the entire personnel file; he instead permitted petitioner to request specific items from the file during the hearing. Only one of petitioner's requests was denied. The examiner refused to permit him to see evaluations written by previous supervisors, for petitioner had not been discharged on account of poor job performance and the documents, accordingly, were not relevant. Because petitioner was given access to all relevant

---

**5.** In his brief, petitioner also maintains that Williams had given him permission to leave work early. In support of this assertion, petitioner refers to his own testimony that Williams had said "You may go, but you've abandoned your job. You may go." Because this language could be interpreted as a denial of permission, we see no basis to question the examiner's conclusion that petitioner had not received permission to leave.

**6.** We do not understand the appeals examiner to have disagreed with petitioner's assertion that he is entitled to subpoena—and have present—all relevant witnesses. *See* D.C.Code 1973, § 46–313(h); *Unemployment Compensation Bd. of Review v. Stiles,* 19 Pa.Cmwlth. 38, 340 A.2d 594, 597 (1975); *cf. Pillis v. District of Columbia Hackers' License App. Bd.,* D.C.App., 366 A.2d 1094, 1096 n.2, *cert. denied,* 430 U.S. 937, 97 S.Ct. 1566, 51 L.Ed.2d 784 (1977) (re-

quest for continuance to subpoena witnesses denied where proffered evidence would be irrelevant). While denying a continuance to obtain the subpoenaed witnesses, the examiner emphasized at the outset of the hearing that he would grant a continuance on petitioner's motion if it became obvious during the hearing that petitioner would be prejudiced by the absence of these witnesses. At no time thereafter did petitioner make such a motion, including a proffer indicating why the witnesses were needed, given the issues and drift of the testimony.

**7.** Because petitioner's contention that the hospital failed to comply with the subpoena duces tecum is without support in the record, his contention that the Board erred in failing to seek a contempt citation against the hospital is without merit.

material in his personnel file, we cannot find that the examiner denied him the opportunity to present evidence in support of his contentions, depriving him of a fair hearing. *See* D.C.Code 1973, § 1–1509(b) (each agency shall exclude irrelevant evidence).

■ Finally, petitioner asserts that the examiner's denial of his request to sequester the witnesses deprived him of the right to a fair hearing and due process of law. In particular, petitioner maintains that the examiner based his decision primarily on the testimony of Mrs. King, a witness to the conversation between Williams and petitioner, and that her testimony was affected by Williams' earlier testimony on the same subject. We cannot sustain this contention. The parties to an unemployment compensation hearing are not bound by the rules of evidence. *See Griffith v. Heath,* D.C.App., 257 A.2d 488, 491 (1969); D.C.Code 1973, § 46–311(c). *See also L. S. Ayres & Co. v. NLRB,* 551 F.2d 586, 588 (4th Cir. 1977) (per curiam) (although Rule 615 of the Federal Rules of Evidence makes sequestration a matter of right rather than discretion in federal courts, the exclusion of witnesses before the Board remains a matter resting within the sound discretion of the Board). The examiner was therefore not required to sequester witnesses, although he had the discretion to do so. *See also L. S. Ayres & Co., supra* at 588; *NLRB v. Stark,* 525 F.2d 422, 426–30 (2d Cir. 1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1463, 47 L.Ed.2d 734 (1976). Moreover, his failure to exclude Mrs. King was not an abuse of discretion, for her testimony did not prejudice petitioner. Although she corroborated Williams' statements on the job abandonment issue, petitioner's own testimony did so as well. In light of those facts, we cannot find that petitioner has been denied due process.[8]

V.

For the reasons set forth above, we reverse the Final Decision of the Board and remand the case for further proceedings consistent with this opinion.

*So Ordered.*

---

8. Petitioner also asserts that he was denied due process because the hospital failed to afford him a hearing with right to counsel before it discharged him. We need not reach this issue, however, for petitioner himself has conceded that this issue is "improvident to this appeal." All that an employer need show here is that the employee was on notice that he could be discharged for the type of misconduct contemplated by § 46–310(b). An employer need not demonstrate, additionally, that the discharge for misconduct was procedurally proper—an issue that presumably is for a grievance procedure and/or litigation that may not be resolved by the time the Board determination must be made.