**Sylvia J. LONG, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SERVICES, Respondent.**

**Potomac Electric Power Company, Intervenor.**

**No. 88–913.**

District of Columbia Court of Appeals.

Argued Nov. 7, 1989.

Decided Feb. 16, 1990.

Rebecca K. Troth, with whom Jane Lang, Washington, D.C., was on the briefs, for petitioner.

N. Denise Wilson–Taylor, Washington, D.C., for respondent.

George W. Miller, with whom Barbara L. Sloan and Susan H. Power, Washington, D.C., were on the brief, for intervenor.

Before ROGERS, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

Petitioner seeks review of a Department of Employment Services ("DOES" or "Department") decision holding her ineligible for unemployment compensation because she was discharged for "misconduct." Unfortunately, the record is inadequate to permit us to perform our appellate review function. Accordingly, we must remand for further agency action.

---

## I

The factual setting, briefly put, was as follows. Petitioner, then an employee of Potomac Electric Power Company ("PEPCO"), filed a charge in the District of Columbia Office of Human Rights ("OHR") on September 30, 1986, alleging that PEPCO had discriminated against her on the basis of race. Petitioner took with her to an OHR conference four PEPCO documents, which she obtained, at least in part, from PEPCO computer disks.[1] Five days later, after an investigation, PEPCO wrote petitioner: "As a result of your unauthorized entry into, and search of, Company records and your unauthorized removal of Company documents in violation of Company and Departmental rules, you are discharged, effective close of business, December 8, 1986."[2]

Petitioner applied for unemployment compensation. Two hearings were held before a DOES appeals examiner, the second following an order of remand by the DOES Office of Appeals and Review ("OAR").[3] Each hearing resulted in an appeals examiner decision denying petitioner's claim.[4] The second decision was summarily affirmed by OAR. An appeal was then taken to this court.

## II

All agency action must ultimately rest upon legal principles established by statute, regulation or case law. Paramount in any agency decision for purposes of appellate review is a clear exposition of the legal principle or principles underlying the agency decision. "Where an administrative agency is delegated broad authority to administer a statutory scheme ... we defer to a reasonable construction of the statute made by the agency." *Smith v. District of Columbia Dep't of Employment Servs.*, 548 A.2d 95, 97 (D.C.1988) (citations omitted). However, "[a]bsent an analysis staking out an agency position to which this court normally would accord some deference," *Wells v. District of Columbia Dep't of Employment Servs.*, 513 A.2d 235, 242 (D.C.1986), we have no choice but to remand for clarification. "An administrative order can only be sustained on the grounds relied on by the agency; we cannot substitute our judgment for that of the agency." *Jones v. District of Columbia Dep't of Employment Servs.*, 519 A.2d 704, 709 (D.C.1987) (citations omitted); *see also Jadallah v. District of Columbia Dep't of Employment Servs.*, 476 A.2d 671, 675 n. 3 (D.C.1984) (per curiam).

In this case, the Department denied unemployment compensation on the ultimate ground that petitioner was discharged for "misconduct." The District of Columbia Unemployment Compensation Act, D.C. Code §§ 46–101 to 46–128 (1987) (the "Act"), is the controlling statute. It defines the word "misconduct":

**1.** There was some conflicting testimony both as to precisely what documents petitioner had and how she came to have them. No findings were made to resolve these conflicts.

**2.** The appeals examiner's first decision erroneously quotes this discharge letter as using the phrase *"and* violation of company and departmental rules" instead of *"in* violation of Company and Departmental rules" (emphases added). The distinction is important in determining the grounds of the discharge. *See infra* note 14. Moreover, it is unclear whether the phrase "in violation of Company and Departmental rules" modifies both the phrases "unauthorized entry into, and search of, Company records" and "unauthorized removal of Company documents" or whether it modifies only the latter phrase.

**3.** The remand stated that the examiner had failed to make adequate findings as to the sufficiency of the employer's asserted reasons for the discharge, *see infra* note 11, and as to the issue of consistent enforcement. *See infra* note 8. The appeals examiner's first decision simply stated that no evidence had been offered to show that the rule was not consistently enforced, but the remand order stated that the burden to make a showing of consistent enforcement was on the employer (citing 7 DCMR § 312.2 (1986) (burden of persuasion is on party alleging misconduct)). Although the remand was technically only for a new hearing on these two issues, in fact the second hearing considered many of the original issues anew.

**4.** The second decision appears to be complete in itself and does not incorporate by reference the first opinion. However, we have taken both opinions into account in considering this appeal. By stipulation of the parties, the record of the first hearing became part of the entire record.

For the purposes of this section, the term "misconduct" means an act of willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of his employees, negligence to such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or showing an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer.

D.C.Code § 46–111(b)(2) (1987). Furthermore, the Department, pursuant to statutory authority,[5] has by regulation particularized the meaning of the word "misconduct" within the statutory scheme:

Misconduct occurring in the course of work includes, but is not limited to, the following:

(a) Willful violation of employer's rules;

(b) Intoxication;

(c) Repeated disregard of reasonable orders;

(d) Sabotage;

(e) Gross neglect of duties;

(f) Insubordination; and

(g) Dishonesty.

7 DCMR § 312.3 (1986). The regulations further provide:

If willful violation of employer's rules is the basis for a disqualification from benefits because of misconduct, the Director shall determine the following:

(a) That the existence of the employer's rule was known to the employee;

(b) That the employer's rule is reasonable; and

(c) That the employer's rule is consistently enforced by the employer.

*Id.* § 312.4.

It is clear that the appeals examiner was of the view, at least in part, that petitioner had engaged in "misconduct" because she had violated a PEPCO rule. The examiner did not make a clear finding, however, as to petitioner's mental state nor did the examiner articulate her view of the legal standard governing an employee's mental state.[6] The Act requires that the violation be "deliberate"; the regulation uses the word "willful."[7] The difficulty is that we cannot perceive the appeals examiner to have made any finding that petitioner's action here was either "willful" or "deliberate."[8] Indeed, there is a rather telling indication to the contrary in the examiner's statement that "[w]hile claimant believes her conduct was not done in violation of the employer's rule her actions in this case can not be overlooked."[9] The latter phrase

---

**5.** D.C.Code § 46–111(b)(3) (1987) provides:
The District of Columbia Unemployment Compensation Board shall add to its rules and regulations specific examples of behavior that constitute misconduct within the meaning of this subsection.

**6.** Indeed, it is not clear precisely what rule petitioner was found to have violated. Before us, the parties disagree as to whether PEPCO Policy No. 303 or PEPCO Policy No. 304 applies, or whether both apply. Moreover, the employer suggests that in any event, there was "an unwritten, but fully understood, policy and practice" which petitioner violated but the appeals examiner made no explicit finding as to the existence of any such policy or practice as the equivalent of a rule. Furthermore, exactly how the applicable rule, whatever it may have been, was violated is in some doubt. There is no finding, for example, that the word "[r]emoving," used in Policy No. 303, includes an act of obtaining access by computer.

**7.** On remand, the Department should make clear whether it treats the two words as synon-

ymous and, if not, its justification for departing from the statutory definition.

**8.** The examiner did find that the rule was known to petitioner, as required by 7 DCMR § 312.4 (1986), but it does not follow that petitioner knew that her conduct was in violation of that rule. With respect to the issue whether PEPCO consistently enforced the rule (whatever it was; *see supra* note 6) applicable to petitioner's conduct, the examiner stated only that "the employer has demonstrated that the rule is consistently enforced within the workplace." While substantial evidence was introduced to support a finding of consistent enforcement, the Department on remand should articulate how that finding is linked to the specific rule or rules it determines to be at issue.

**9.** The employer asks us to read the quoted language as a finding only of petitioner's present view, not that existing at the time of the violation. Such a reading would be at best strained.

may reflect the examiner's interpretation of the statute and regulations to mean that even if petitioner subjectively believed she was committing no violation, misconduct may be found when the employee should have known that the action would constitute a violation. If this is the examiner's view, she should make it explicit and set forth the legal reasoning. *See Wells, supra*, 513 A.2d at 242 (case with open legal issue remanded for "reasoned interpretation by the agency charged with administering the statute").[10]

It is possible that the appeals examiner alternatively relied upon a form of misconduct other than violation of an employer's rule.[11] She states that "[t]he claimant's conduct was intentionally done against the legitimate interest of this employer." It is not clear what the source of this standard is, whether it is meant to be different from the rule violation standard and to what

conduct the Department was referring. It may have been meant to coincide with the clause in section 46–111(b)(2) of the Act[12] which defines "misconduct" to include "an act of willful disregard of the employer's interests"; or, as suggested by the employer before us, it may have been meant to coincide with the clause "disregard of standards of behavior which the employer has a right to expect from his employees"; or it may have been meant to coincide with the clause "showing an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer."[13] We simply cannot tell with confidence what the hearing examiner meant. The full legal basis on which an administrative agency relies in its determination and its underlying factual determinations should not be left to appellate speculation.[14]

---

**10.** The Department cites to us *Simpson v. Commonwealth of Pennsylvania Unemployment Compensation Bd. of Review*, 69 Pa.Cmwlth. 120, 450 A.2d 305 (Pa.Commw.Ct.1982), *cert. denied*, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 97 (1983). In that case, however, the employee unquestionably knew that his action violated the rule but justified it on the ground that the rule itself was constitutionally invalid. Petitioner, on the other hand, suggests that this court has already resolved the legal issue presented here in *Jadallah, supra*. That case involved misconduct based upon "dishonesty," 7 DCMR § 312.3(g) (1986), however, and is therefore to be distinguished.

**11.** We also do not fully understand the examiner's conclusion that "the employer through the presentation of documents and testimony has demonstrated that any one of the several different reasons causing claimant's dismissal was sufficient grounds to discharge her." This was in response to the OAR remand order that the examiner make a finding "whether each reason [stated by the employer as a ground for discharge] was an independent or separate basis for claimant's discharge, and thus [whether] any one of several different reasons would have been a sufficient ground for discharge" or "whether all reasons advanced by the employer, taken into consideration collectively, constituted the basis for claimant's discharge" (citing *Jones v. District of Columbia Unemployment Compensation Bd.*, 395 A.2d 392 (D.C.1978)). As indicated, *see supra* note 2, whether the employer asserted in its discharge letter any ground for discharge other than violation of a company rule is unclear.

**12.** Our case law relating to misconduct discharges does not establish types of misconduct apart from those defined in the statute and implementing regulations but rather deals with the implications and limitations of those definitions. *See, e.g., Hickenbottom v. District of Columbia Unemployment Compensation Bd.*, 273 A.2d 475, 478 (D.C.1971) (noting, in connection with a statute substantially similar to present section 46–111(b)(2), that "[t]he types of conduct ... for which the misconduct penalty may be imposed, impute knowledge to the employee that should he proceed he will damage some legitimate interest of the employer for which he could be discharged"); *Keep v. District of Columbia Dep't of Employment Servs.*, 461 A.2d 461, 463 (D.C.1983) (per curiam) ("implicit in this court's definition of 'misconduct' is that the employee intentionally disregarded the employer's expectations for performance").

**13.** However, the applicability of this last quoted phrase is unclear. The syntax of section 46–111(b)(2) is such that this phrase appears to modify the phrase "negligence to such a degree or recurrence," conduct inapplicable here. This court in *Keep, supra* note 12, 461 A.2d at 463, seems to have similarly read almost identical language quoted in *Hickenbottom, supra* note 12, 273 A.2d at 478.

**14.** Ultimately, of course, the agency's "finding of misconduct must be based fundamentally on the reasons specified by the employer for the discharge." *Smithsonian Inst. v. District of Columbia Dep't of Employment Servs.*, 514 A.2d 1191, 1194 (D.C.1986) (citing *Jones, supra* note 11, 395 A.2d at 395).

In short, we are unable to perform our function of appellate review where we cannot confidently ascertain either the precise legal principles on which the agency relied or its underlying factual determinations.[15] "[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained'." *Gordon v. District Unemployment Compensation Bd.*, 402 A.2d 1251, 1258 (D.C.1979) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943)). Accordingly, we must remand the case for further proceedings consistent with this opinion.

*So ordered.*

---

**15.** At least for purposes of appellate review, consideration might be given to a format for decisions of appeals examiners that would follow the general practice of trial courts in dealing separately and distinctly with findings of fact (which do not simply restate the testimony and contentions of the parties but rather resolve disputed factual issues, *see Hedgman v. District of Columbia Hackers' License Appeal Bd.*, 549 A.2d 720, 723 (D.C.1988)), and conclusions of law which state the applicable legal principles relied on in the decision, followed by an application of the principles to the facts as found. *See* D.C.Code § 1–1509(e) (1987) (every agency decision "shall be accompanied by findings of fact and conclusions of law"); *Washington Ethical Society v. District of Columbia Bd. of Zoning Adjustment*, 421 A.2d 14, 16 (D.C.1980) (agency decisions must be "'based on express factual findings which articulate with certainty and clarity the basis for the decision'" (quoting *Dupont Circle Citizens Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 390 A.2d 1009, 1011 (D.C.1978))).