DISTRICT OF COLUMBIA, Petitioner,

v.

DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.

No. 94–AA–1197.

District of Columbia Court of Appeals.

Argued Sept. 18, 1997.

Decided June 18, 1998.

Sheila Kaplan, Assistant Corporation Counsel, with whom Garland Pinkston, Jr., Acting Corporation Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corporation Counsel, and Sonia A. Bacchus, Assistant Corporation Counsel, were on the brief, for petitioner.

Michael A. Milwee, Washington, DC, for respondent.

Before WAGNER, Chief Judge, and TERRY and STEADMAN, Associate Judges.

TERRY, Associate Judge:

The District of Columbia seeks review of a decision by the Department of Employment Services (DOES) awarding unemployment

compensation benefits to Loretta Smith, a former District employee who was fired for misconduct. We find a fundamental flaw in the Department's ruling, and accordingly we reverse its order and remand the case for further proceedings.

## I

Loretta Smith was employed as a teacher in the District of Columbia Public Schools (DCPS). On May 12, 1992, the Superior Court issued a "stay-away" order against Ms. Smith in a case involving matters unrelated to her job. On August 18, 1992, the Superior Court found her guilty of contempt for violating the stay-away order, the violation having occurred on July 2. She was released on bond pending sentencing, but on October 9, 1992, she was again found guilty of violating the stay-away order. On October 16 Ms. Smith was sentenced to six months in jail.[1]

Eleven days later, on October 27, the District sent a letter to Ms. Smith at the jail stating that her employment would be terminated on November 12, 1992. The discharge was based on D.C.Code § 1–617.1(d)(22) (1992), which allows termination of a District of Columbia employee after conviction of a misdemeanor "when the conviction is based on conduct that would affect adversely the employee's or the agency's ability to perform effectively." The letter stated that "the Administration has concluded that it would be contrary to the best interests of the School System to continue your employment."[2]

Several weeks later Ms. Smith filed for unemployment compensation benefits. Her claim was initially denied on the ground that she had been discharged from her job for "gross misconduct occurring in [her] most recent work." See D.C.Code § 46–111(b) (1996). Ms. Smith appealed, and a hearing was held before an appeals examiner, who found:

[T]here has been no showing by the employer that claimant's conviction affected her ability to perform. Employer has been unable to show that some misconduct occurred during the course of claimant's most recent work. The employer has been unable to show an act of willful or wanton disregard of employer interests or an intentional and substantial disregard of the employer's interest or of employee's duties and obligations to the employer.

Claimant was involved in an action away from the employer and not connected with her work.

On the basis of these findings, the examiner concluded that "claimant was terminated; however, no misconduct under the D.C. Act has been proven."

The District took an administrative appeal to the Office of Appeals and Review (OAR), which held that the examiner's ruling was supported by "reliable, probative, and substantial evidence." It ruled that under *Green v. District Unemployment Compensation Board*, 346 A.2d 252, 256 (D.C.1975), and *Jones v. District Unemployment Compensa-*

---

**1.** Ms. Smith was also convicted several months later of a second contempt, based on conduct occurring in March 1993. On appeal from the two contempt convictions, this court reversed the second conviction but affirmed the first. *Smith v. United States*, 677 A.2d 1022 (D.C.1996).

**2.** The October 27 letter, signed by the Director of the DCPS Division of Personnel Services, stated in part:

Pursuant to D.C.Code, Section 1–617.1(d), and pertinent provisions of the negotiated Agreement with the Washington Teachers' Union ... this is to notify you that you will be terminated from employment with the D.C. Public Schools effective Wednesday, November 12, 1992.

Ground(s): D.C.Code § 1–617.1(d)(22): Conviction of a misdemeanor, when the conviction is based on conduct that would affect

adversely the employee's or the agency's ability to perform effectively.

Reason(s): On October 16, 1992, you were convicted of contempt of court and sentenced to six months' imprisonment. More specifically, it was held that you had violated a stay-away order issued by the court, thereby concomitantly violating the conditions of your release pending sentencing.

In light of this evidence that you have demonstrated a flagrant disregard for the law, the Administration has concluded that it would be contrary to the best interests of the School System to continue your employment. We have concluded that it would be antithetical to the mission of the School System to continue to employ, as a teacher and role model for impressionable youth, an individual, like yourself, who has flaunted [*sic*] the law by violating an order of the court.

*tion Board,* 395 A.2d 392, 395 (D.C.1978), a finding of misconduct must be based on the reasons given by the employer for the discharge. The OAR read the examiner's decision as finding that "employer failed to show that the conduct for which claimant was convicted adversely affected claimant's ability ... to perform effectively" and "also failed to show that [Ms. Smith's] conduct was a willful violation of employer's rule." Holding that the examiner's findings were supported by substantial evidence, the OAR affirmed her ruling. The District now asks us to review the OAR's decision, contending that it "erred in finding that Loretta Smith's discharge was not based on misconduct within the meaning of D.C.Code § 46–111(b)."

## II

■ This court has repeatedly held that the District of Columbia Administrative Procedure Act requires agency decisions to meet a three-part test: "(1) the decision must state findings of fact on each material, contested factual issue; (2) those findings must be based on substantial evidence; and (3) the conclusions of law must follow rationally from the findings." *Perkins v. District of Columbia Dep't of Employment Services,* 482 A.2d 401, 402 (D.C.1984) (citations omitted); *see* D.C.Code § 1–1509(e) (1992). "If the agency 'fails to make a finding on a material, contested issue of fact, this court cannot fill the gap by making its own determination from the record, but must remand the case for findings on that issue.'" *Mack v. District of Columbia Dep't of Employment Services,* 651 A.2d 804, 806 (D.C.1994) (quoting *Colton v. District of Columbia Dep't of Employment Services,* 484 A.2d 550, 552 (D.C.1984)). "[A] reiteration of the evidence is not a finding of fact." *Newsweek Magazine v. District of Columbia Comm'n on Human Rights,* 376 A.2d 777, 784 (D.C.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 729, 54 L.Ed.2d 758 (1978).

In this case the OAR granted benefits to Ms. Smith on the ground that the appeals examiner had found that the District had not shown a rule violation.[3] The OAR plainly misread the examiner's decision. The examiner did not state that Ms. Smith was fired for violating an "employer's rule"; in fact, her decision does not even mention a "rule" that might apply to this case. Rather, the examiner found that DCPS had failed to prove that Ms. Smith's conviction occurred during her most recent work, *see* D.C.Code § 46–111(b), and also had failed to prove "an act of willful or wanton disregard of employer interests or an intentional and substantial disregard of the employer's interest or of employee's duties and obligations to the employer." Because the OAR misread the examiner's ruling,[4] the OAR's decision, which is the final order of the Department, cannot be sustained.

■ Although the OAR stated in its Final Decision that DCPS had failed to show that Ms. Smith violated an employer's rule, it did not identify which rule she was alleged to have violated or on what evidence it relied to conclude that there was no rule violation. The OAR appears to assume that D.C.Code § 1–617.1(d), which lists twenty-two types of "cause" for which an employee of the District of Columbia (including the DCPS) may be discharged, is a personnel rule. Common sense tells us that it plainly is not. Section 1–617.1(d) is not a collection of rules governing employees' behavior in the workplace; it merely identifies twenty-two instances in which the District may fire an employee for cause. *See District of Columbia Dep't of Corrections v. Teamsters Local 246,* 554 A.2d 319, 322–325 (D.C.1989). It is part of a much larger statute, the District of Columbia Comprehensive Merit Personnel Act, a thorough and exhaustive piece of legislation which serves as "a comprehensive merit system of personnel management for the government of the District of Columbia...." D.C.Code

---

3. The OAR apparently had in mind the regulation (see page 936, *infra*) which defines misconduct to include "willful violation of employer's rules." 7 DCMR § 312.3(a) (1986).

4. The OAR stated in part:
Employer discharged claimant for violation of its rule, conviction of a misdemeanor for conduct that was not connected with the work place.... Since employer discharged claimant for violation of its rule, a finding of misconduct for denial of unemployment benefits must be based solely on that ground....

§ 1–601.1(1) (1992). The fact that it was enacted by our legislature, the Council of the District of Columbia, does not make it an "employer's rule" as that term is used in the regulations. The OAR's (and the appeals examiner's) discussion of whether Ms. Smith violated an "employer's rule" is thus essentially irrelevant. She was not charged with violating any such rule, nor was DCPS required to prove such a violation in order to sustain her discharge. Rather, she was fired because she had been convicted of a criminal offense which made her unsuitable for continued employment as a teacher in the public schools.

■ On remand, DOES should bear in mind that it is bound by the original notice of termination in deciding whether an employee was fired for misconduct. *See Green, supra,* 346 A.2d at 256; *Smithsonian Institution v. District of Columbia Dep't of Employment Services,* 514 A.2d 1191, 1193–1194 (D.C. 1986); *Jones, supra,* 395 A.2d at 395. The notice of termination, *supra* note 2, plainly stated that Ms. Smith was fired pursuant to D.C.Code § 1–617.1(d)(22), which states that "[c]onviction of a misdemeanor, when the conviction is based on conduct that would affect adversely the employee's or the agency's ability to perform effectively," is "cause" for removal from employment. The notice also pointed out that Ms. Smith had shown "a flagrant disregard for the law [and] concluded that it would be contrary to the best interests of the School System ... to continue to employ, as a teacher and role model for impressionable youth," a person such as Ms. Smith who had flouted the law by violating a court order. The OAR, sidetracked by its misconception that Ms. Smith was alleged to have violated an employer's rule, failed to address adequately the stated reasons for Ms. Smith's discharge.

### III

Since a remand is necessary, we deem it appropriate to address certain issues that are likely to arise on remand.

First, we must determine which statute and which regulations apply to this case—a difficult task, given the frequency with which the Unemployment Compensation Act has been amended over the years. D.C.Code § 46–111(b), as it now exists (*i.e.,* in the 1996 version of the Code), draws a distinction between "gross misconduct" and "misconduct other than gross misconduct" which affects the duration of the period during which a discharged employee is disqualified from receiving benefits.[5] This distinction first appeared in emergency legislation enacted at the end of 1992 and applies to claims for benefits "for weeks commencing after January 3, 1993."[6] Since Ms. Smith filed her claim on January 5, 1993, the statute suggests that there may be a question whether her misconduct, if proven, was "gross" or "other than gross." On the other hand, section 46–111(b), as amended in 1992, also provides that both "gross" and "other than gross" misconduct shall be "determined under duly prescribed regulations." The regulation defining "gross misconduct" did not take effect until June 24, 1994, long after Ms. Smith committed the alleged misconduct and long after she filed her claim for benefits. *See* Notice of Final Rulemaking, 41 D.C. Register 4167 (1994). Prior to June 24, 1994, the applicable regulation was 7 DCMR § 312.3 (1986), which did not define, or even mention, "gross" misconduct. That regulation provided in full:

Misconduct occurring in the course of work includes, but is not limited to, the following:

(a) Willful violation of employer's rules;

(b) Intoxication;

(c) Repeated disregard of reasonable orders;

(d) Sabotage;

(e) Gross neglect of duties;

---

**5.** Paragraph (1) of section 46–111(b) provides that a person who has been discharged for "gross misconduct" shall not be eligible for benefits unless that person has been employed for ten successive weeks since the discharge. Paragraph (2) provides that someone fired for misconduct "other than gross misconduct" shall not be eligible for benefits unless employed for eight successive weeks since the discharge.

**6.** *See* D.C. Act No. 9–349, § 106, 40 D.C. Register 571 (1992).

(f) Insubordination; and

(g) Dishonesty.

■ Thus we are faced with a gap of almost a year and a half between the effective date of the statute limiting the eligibility for benefits of a person discharged for "gross misconduct ... as determined by duly prescribed regulations" (January 3, 1993) and the effective date of the regulation that, for the first time, defined "gross misconduct" (June 24, 1994). Since "gross misconduct," as that term is used in D.C.Code § 46–111(b)(1), was thus legally undefined between January 3, 1993, and June 24, 1994, we conclude that section 46–111(b)(1) was a nullity during that period, and that a person seeking unemployment benefits between January 3, 1993, and June 24, 1994—such as Ms. Smith—could not be deemed ineligible for benefits on the ground of "gross misconduct."

This does not mean, however, that Ms. Smith is automatically entitled to benefits. The District is still entitled to prove that she was discharged for misconduct "other than gross misconduct ... as defined by duly prescribed regulations." D.C.Code § 46–111(b)(2). The relevant regulation in effect at the time of Ms. Smith's discharge (and at the time she applied for benefits) was 7 DCMR § 312.3, which we have quoted above at page 936. That regulation must be read in light of the prior version of D.C.Code § 46–111(b)(2), which was in effect until the end of 1992 and contained a definition of misconduct that went well beyond the limited language of the regulation:

> For the purposes of this section, the term "misconduct" means an act of willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of his employees, negligence to such a degree or recurrence as to manifest culpability,

wrongful intent, or evil design, or showing an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer.

D.C.Code § 46–111(b)(2) (1990). This code provision tracks almost verbatim a definition of misconduct which this court adopted in 1971. *See Hickenbottom v. District of Columbia Unemployment Compensation Board,* 273 A.2d 475, 477–478 (D.C.1971) (citing 48 AM.JUR. *Social Security, Unemployment Insurance, Etc.* § 38 (1943)); *see also Mack, supra,* 651 A.2d at 806. Given the significantly different effective dates of the various statutes and regulations, we hold that the District is entitled to show, if it can, that Ms. Smith's first contempt conviction[7] was the result of misconduct as defined in either the 1986 version of 7 DCMR § 312.3 or the *Hickenbottom* standard set forth in the pre-1993 version of D.C.Code § 46–111(b)(2).[8]

■ One additional matter warrants attention. It is not clear from the record whether Ms. Smith was actually an employee of DCPS when she committed the first contempt on July 2, 1992. By July the 1991–1992 school year had ended, and she was not assigned to a position for the 1992–1993 school year until September 23, 1992. Because any misconduct, in order to be disqualifying, must have occurred during the employee's "most recent work," D.C.Code § 46–111(b), the District must show that Ms. Smith's misconduct occurred during her employment as a teacher. If the District can establish that Ms. Smith was an employee of the school system during the summer of 1992, when she committed the contemptuous act, there will be no unresolved issue as to when the misconduct occurred. However, if she was not an employee on July 2, then DOES may have to determine whether the

---

7. The conviction on which Ms. Smith's discharge was based was the first one in October 1992, not the second one in April 1993. See note 1, *supra.*

8. Since the regulation states that misconduct "includes, but is not limited to," the seven listed types of misbehavior, we are satisfied that the definition of misconduct is broad enough to encompass the *Hickenbottom* standard, especially

when both the regulation and the pre-1993 statute were on the books at the same time. We note, incidentally, that much of the language of the *Hickenbottom* standard appears in the current (1994) version of the regulations. *See* 7 DCMR §§ 312.3 (defining "gross misconduct") and 312.5 (defining "other than gross misconduct"), 41 D.C. Register at 4167–4168.

disqualifying misconduct was the contemptuous act (which occurred on July 2) or the conviction of contempt (which occurred on October 16 when Ms. Smith was concededly an employee). On this point we express no view at this time.

### IV

For the foregoing reasons, we reverse the decision of the OAR and remand the case to DOES for reconsideration in light of this opinion.

*Reversed and remanded.*

STEADMAN, J., concurs in the result.