**Freddie R. GILES, Appellant,**

v.

**DISTRICT OF COLUMBIA DEPART- MENT OF EMPLOYMENT SER- VICES, Appellee.**

**No. 97–AA–1012.**

District of Columbia Court of Appeals.

Submitted Sept. 16, 1999.

Decided Aug. 31, 2000.

Freddie R. Giles, pro se.

Michael A. Milwee was on the brief for respondent.

Before RUIZ and GLICKMAN, Associate Judges, and PRYOR, Senior Judge.

RUIZ, Associate Judge:

Petitioner, Freddie Giles, appeals a decision by the Office of Appeals and Review (OAR) which affirmed his disqualification for unemployment compensation benefits because his termination was due to "gross misconduct." *See* D.C.Code § 46–111(b) (1996). Giles was employed as a plumber by American University from January 1, 1993, until May 12, 1995, at which time he was terminated for poor work performance and failure to obey direct supervisory orders. Giles filed a claim for unemployment benefits on May 10, 1995. He was disqualified from benefits by the Claims Examiner due to "gross misconduct." After an appeal hearing, during which Giles and witnesses for American University gave testimony and presented documentary evidence, the Appeals Examiner affirmed the original gross misconduct disqualification. The OAR also affirmed the gross misconduct disqualification. Giles appeals the disqualification decision to this court. We vacate and remand for further consideration as to whether petitioner's

"poor work performance" constituted "gross misconduct" disqualifying him from unemployment compensation benefits under the statute.

## FACTUAL SUMMARY

Giles is an experienced plumber who was popular with the students at American University.[1] On several occasions in the period between September 1994 and April 1995, Giles failed to perform his job according to his employer's expectations. The record documents a number of warnings exhorting Giles to improve his performance and setting forth the consequences if he did not. In a letter dated September 22,1994, Giles' supervisor, Rick Ricker, documented Giles' "[m]isuse of time during regular work hours" and warned that Giles' "productivity during regular hours and [his] need to perform work in a timely fashion had become increasingly alarming." The letter detailed the "la[te]st incident" on September 21, 1994, in which Giles failed to timely unstop a toilet as directed. A formal written reprimand from Ricker to Giles for failure to turn in work tickets, dated January 20, 1995, notes that Ricker and Giles spoke on January 12, 1995, "and a number of times before," concerning Giles' failure to fill out and return completed work tickets. On January 26, 1995, Willy Suter, a Director of Physical Plant Operations, cited Giles for "poor work performance" and a "careless and slipshod response" to a work request concerning a water leak. This memorandum cautioned Giles that future work-related problems would result in "serious disciplinary action that could include your termination." Giles was ordered to contact his supervisors if "ever in doubt about what is expected" or if "unable to solve a problem." Finally, an April 27, 1995, memorandum notifying Giles of his termination documents two examples of poor work performance after the January 26, 1995, written warning. Specifically, on April 20, 1995, Giles was asked by his supervisor to help another plumber repair piping, but Giles did not respond and failed to contact his supervisor when he had difficulty obtaining his tools. Similarly, on April 26, 1995, Giles had difficulty repairing a clogged drain in a water fountain but failed to contact his supervisor.

## ANALYSIS

### A. Standard of Review

■ This court must affirm the agency's decision when (1) the agency made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) the Board's conclusions flow rationally from its findings of fact. *Perkins v. District of Columbia Dep't of Employment Servs.*, 482 A.2d 401, 402 (D.C.1984); D.C.Code § 1–1510(a)(3)(E) (1999). We defer to agency findings of fact so long as they are supported by substantial evidence. *See Cooper v. District of Columbia Dep't of Employment Servs.*, 588 A.2d 1172, 1174 (D.C. 1991). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gardner v. District of Columbia Dep't of Employment Servs.*, 736 A.2d 1012, 1015 (D.C.1999) (citations omitted).

### B. Statutory Scheme

As a result of recent amendments, our Unemployment Compensation Act now differentiates between terminations for "gross misconduct," D.C.Code § 46–111(b)(1), and terminations for "misconduct, other than gross misconduct," D.C.Code § 46–111(b)(2). *See generally District of Columbia v. Department of Employment Servs.*, 713 A.2d 933, 936–37 (D.C.1998) (explicating history of recent amendments). The statute provides that the term "gross misconduct" shall be "determined under duly prescribed regula-

---

1. Petitions circulated by university students captioned "We want 'Freddy G. Plumber' Back!!!" demanded Giles' reinstatement and garnered over 150 signatures.

tions," § 46–111(b), regulations that took effect June 24, 1994, *see* 7 DCMR § 312 (1994), 41 D.C.Reg. 4167 (1994). "The relatively new provisions in the regulations relating to gross misconduct and simple misconduct have not yet been construed by this court." *The Washington Times v. District of Columbia Dep't of Employment Servs.*, 724 A.2d 1212, 1221 (D.C.1999).

Under the statute, an employee who is discharged for "gross misconduct," as defined in the regulations, is disqualified from receiving unemployment benefits immediately after that discharge. *See* D.C.Code § 46–111(b)(1).[2] The regulations define gross misconduct as "an act which deliberately or willfully violates the employer's rules, deliberately or willfully threatens or violates the employer's interests, shows a repeated disregard for the employee's obligation to the employer, or disregards standards of behavior which an employer has a right to expect of its employee." 7 DCMR § 312.3.[3] The term "other than gross misconduct" means "an act or omission by an employee which constitutes a breach of the employee's duties or obligations to the employer, a breach of the employment agreement or contract, or which adversely affects a material employer interest ... includ[ing] those acts where the severity, degree, or other mitigating circumstances do not support a finding of gross misconduct."[4] 7 DCMR § 312.5.

## C. Evidence of Gross Misconduct

■ Giles argues that the facts presented in his case do not support a finding of gross misconduct within the meaning of D.C.Code § 46–111(b)(1) and the regulations.[5] The burden to prove misconduct or

---

**2.** There are consequences in the distinction between a termination for "gross misconduct" and a termination for "misconduct, other than gross misconduct." An individual terminated for simple misconduct is eligible to receive benefits sooner than an individual terminated for gross misconduct. D.C.Code § 46–111(b)(1) provides

[A]ny individual who has been discharged for gross misconduct occurring in his most recent work ... shall not be eligible for benefits until he has been employed in each of 10 successive weeks (whether or not consecutive) and ... has earned wages from employment as defined by this chapter equal to not less than 10 times the weekly benefit amount to which he would be entitled....

D.C.Code § 46–111(b)(2) provides:

[A]ny individual who is discharged for misconduct, other than gross misconduct, occurring in the individual's most recent work ... shall not be eligible for benefits for the first 8 weeks otherwise payable to the individual or until the individual has been employed in each of 8 subsequent weeks (whether or not consecutive) and ... has earned wages from employment as defined by this chapter equal to not less than 8 times the weekly benefit amount to which the individual would have been entitled.... In addition, such individual's total benefit amount shall be reduced by a sum equal to 8 times the individual's weekly benefit amount.

**3.** The regulation provides the following examples of "gross misconduct":

a. Sabotage;
b. Unprovoked assault or threats;
c. Arson;
d. Theft or attempted theft;
e. Dishonesty;
f. Insubordination;
g. Repeated disregard of reasonable orders;
h. Intoxication, the use of or impairment by an alcoholic beverage, controlled substance, or other intoxicants;
i. Use or possession of a controlled substance;
j. Willful destruction of property;
k. Repeated absence or tardiness following warning.

7 DCMR § 312.4.

**4.** The regulation provides the following examples of "misconduct, other than gross misconduct":

a. Minor violations of employer rules;
b. Conducting unauthorized personal activities during business hours;
c. Absence or tardiness where the number of instances or their proximity in time does not rise to the level of gross misconduct;
d. Inappropriate use of profane or abusive language.

7 DCMR § 312.6.

**5.** Giles' brief to the court also argues that his termination was on account of harassment or discrimination. No such claim was made in his initial claimant's statement to the agency. Although given the opportunity at the Appeals

gross misconduct is on the employer. *See The Washington Times,* 724 A.2d at 1218 (citing 7 DCMR § 312.2). The issue before us is whether the facts found by the agency support a finding of gross misconduct within the meaning of D.C.Code § 46–111(b)(1), as elucidated by the regulations.

The benefit claims examiner found from the evidence presented by American University that Giles was terminated due to poor work performance and an unwillingness to perform his tasks in a timely and professional manner. Specifically, the examiner found that "after being warned," Giles "would not contact his supervisor if he encountered a problem, fail[ed] to turn in work tickets daily and fail[ed] to evaluate a plumbing situation effectively." The examiner determined these actions to be "willful and deliberate" so as to constitute gross misconduct pursuant to § 46–111(b)(1).

The Appeals Examiner specifically found Giles' supervisor credible in his determination that Giles was a highly skilled plumber capable of carrying out his assignments. The Appeals Examiner also credited Giles' supervisor's version of the events leading to termination. The Appeals Examiner further found that Giles did not complete his assigned tasks in a timely or a satisfactory manner, despite verbal and written warnings. The OAR summarily affirmed the Appeals Examiner's decision that Giles' poor work performance amounted to gross misconduct.

### D. The Agency's Decision

■ We will affirm the agency's conclusion that Giles' conduct amounts to gross misconduct under the statute if it flows reasonably from the agency's findings of fact and its regulations interpreting the unemployment compensation statute which it administers.[6] *See The Washington Times,* 724 A.2d at 1216. We conclude that we are unable to do so on the present record. In *Long v. District of Columbia Dep't of Employment Servs.,* 570 A.2d 301, 302 (D.C.1990), this court noted that "[p]aramount in any agency decision for purposes of appellate review is a clear exposition of the legal principle or principles underlying the agency decision." In *Long,* the Department of Employment Services' decision simply held that the employee was discharged for "misconduct," and the court remanded for clarification, including a clear fact-finding concerning the employee's mental state, because it found itself unable to perform its appellate function. *See id.* at 303–05. More recently, we remanded a case because the agency "failed even to mention the existence of two statutory levels of misconduct, and a reviewing court should not assume that the issue has been considered *sub silentio* when there is no discernible evidence that it has." *The Washington Times,* 724 A.2d at 1221. Here, both the claims examiner and the appeals examiner found Giles to have been terminated for gross misconduct, based on continued poor work performance after having been warned. Specifically, the claims examiner found that Giles' "poor work was willful and deliberate." The Appeals Examiner, after crediting the supervisor's testimony that Giles was an "excellent plumber, who was highly skilled at carrying out his job assignments," determined that Giles' failure to complete tasks and work orders "as required, despite verbal and written warnings," constituted gross misconduct under the regulations. The Appeals Examiner does not explicitly find that Giles' actions were will-

Examiner's hearing to present evidence bearing on this issue, Giles simply presented vague allegations with no accompanying proof. The Appeals Examiner did not make a specific finding concerning Giles' claim of harassment, but to the extent this claim presents a material, contested issue of fact, the Appeals Examiner specifically credited the account of Giles' supervisor, the individual who Giles claimed harassed him, that Giles was terminated because of poor work performance.

6. The validity of the regulations is not contested in this appeal.

ful and deliberate, although the evidence of Giles' skills and failure to perform up to that standard would permit such an inference. The OAR's decision contains no independent analysis.

 Although the first two levels of the agency's decision reference the "willful and deliberate" language of the regulation, we note that there is no mention of "poor work performance" in the regulation defining gross misconduct. Rather, the regulation speaks of "an act which deliberately or willfully violates the employer's rules, deliberately or willfully threatens or violates the employer's interests, shows a repeated disregard for the employee's obligation to the employer, or disregards standards of behavior which an employer has a right to expect of its employee." 7 DCMR § 312.3. The regulations do mention "repeated disregard of reasonable orders" as an example of gross misconduct, *see* 7 DCMR § 312.4(g), and it is perhaps possible to thereby understand the agency's finding.

Compared to the other examples of gross misconduct in the regulation, however, it is less than clear whether the kind of disregard of orders in the routine performance of work evidenced in this case rises to the level of a violation of the employer's rules, interests or standards of behavior sufficient to constitute gross misconduct, in the context of a statutory scheme that differentiates between simple misconduct and gross misconduct.[7] "[W]e cannot substitute our judgment for that of the agency." *Long,* 570 A.2d at 302. Accordingly, it is necessary to remand for a clarification of the agency's decision.

*Remanded.*

---

7. We note that the current regulations incorporate the 1994 statutory distinction; conduct that was specifically enumerated as "misconduct" in regulations under the prior statute, which did not distinguish between "misconduct" and "gross misconduct," is now enumerated as "gross misconduct." For example, "[r]epeated disregard of reasonable orders" is one of the categories of behavior that constitutes "gross misconduct" under the current regulations, but was an example of "misconduct" under the prior regulations. *Compare* 7 DCMR § 312.4(g) (1994), 41 D.C.Reg. at 4168, *with* 7 DCMR § 312.3(c) (1986). "[I]mplicit in this court's definition of 'misconduct' [prior to statutory distinction between misconduct and gross misconduct] is

that the employee intentionally disregarded the employer's expectations for performance." *Keep v. District of Columbia Dep't of Employment Servs.,* 461 A.2d 461, 463 (D.C. 1983) (per curiam) (applying *Hickenbottom v. District of Columbia Unemployment Compensation Bd.,* 273 A.2d 475 (D.C.1971)); *see District of Columbia v. Department of Employment Servs.,* 713 A.2d at 937 n. 8 (noting that "much of the language of the *Hickenbottom* standard appears in the current (1994) version of the regulations" defining "gross misconduct" and "misconduct, other than gross misconduct," and that "precedents under the *Hickenbottom* standard therefore retain their relevance").