William D. CHASE, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent.

No. 01–AA–260.

District of Columbia Court of Appeals.

Argued June 4, 2002.

Decided Aug. 15, 2002.

Thomas J. Gagliardo, Silver Spring, MD, for petitioner.

Michael A. Milwee, for respondent.

Before STEADMAN, RUIZ and REID, Associate Judges.

STEADMAN, Associate Judge:

The District of Columbia's unemployment compensation law prevents an employee terminated for "gross misconduct" from receiving unemployment compensation benefits. Petitioner challenges the ruling of the Department of Employment Services ("DOES") that the basis of his discharge was gross misconduct. Because the Appeals Examiner failed to make sufficient findings, we are constrained to remand the case for further proceedings.

## I. Facts

Petitioner worked for AIMCO/NHP as a maintenance technician at an apartment complex. On August 13, 2000, a Sunday, while petitioner was on call for emergency repair requests, he responded to a tenant's complaint about a leak. After examining the leak in a bedroom closet ceiling, petitioner announced there was nothing he could do until the next day and left. Petitioner did not contact his supervisor, Betty Wells, to inform her of the situation. The tenant then complained to the apartment management on August 14, 2000. After inspecting the water damage from the leak, Wells terminated petitioner for his actions.

A claims examiner granted petitioner's request for unemployment compensation benefits. AIMCO/NHP noted a timely appeal, which resulted in a hearing before an Appeals Examiner on October 24, 2000. After hearing testimony from Wells and petitioner and receiving into evidence the employer's exhibits, the Appeals Examiner reversed the awarding of benefits on November 3, 2000, concluding that petitioner had been terminated because he had violated his employer's rule prohibiting unsatisfactory work performance [1] and therefore was "disqualified to receive benefits." [2]

---

1. The Appeals Examiner found that "[e]mployer has a written policy contained in its employees['] manual that forbids unsatisfactory work performance. [Petitioner] signed an acknowledgment of receipt form indicating he received the manual."

2. Although the Appeals Examiner in the "Section(s) of Law" portion of the decision quoted the DOES regulation defining "gross misconduct," see note 6 infra, the Appeals Examiner did not make a square finding of "gross misconduct" nor state specifically that petitioner was disqualified from receiving compensation

Petitioner timely appealed, and the Office of Appeals and Review ("OAR") issued a Proposed Decision on December 19, 2000, summarily affirming the Appeals Examiner. Petitioner submitted objections in response, which the OAR rejected in its Final Decision of January 31, 2001.

## II. Legal Principles

Prior to 1993, an employee who had been terminated for "misconduct" became ineligible for unemployment benefits. D.C.Code § 46–111(b) (1983).[3] In 1993, the D.C. Council passed legislation that replaced the single, all-encompassing term of "misconduct" with two separate types of misconduct: "gross misconduct" and the perhaps somewhat clumsily labeled "misconduct, other than gross misconduct," (sometimes termed "simple misconduct").[4] This legislation[5] is now codified in D.C.Code § 51–110(b) (2001), which reads as follows:

> (1) For weeks commencing after January 3, 1993, any individual who has been discharged for gross misconduct occurring in his most recent work, as determined by duly prescribed regulations, shall not be eligible for benefits until he has been employed in each of 10 successive weeks (whether or not consecutive) and, notwithstanding § 51–101, has earned wages from employment as defined by this subchapter equal to not less than 10 times the weekly benefit amount to which he would be entitled pursuant to § 51–107(b).

for that reason. The Director simply affirmed the decision of the Appeals Examiner. However, the parties have briefed the case on the assumption that petitioner was disqualified for gross misconduct and we proceed on that assumption.

3. The relevant statutory provisions were as follows:

> (1) For weeks commencing after March 15, 1983, any individual who has been discharged for misconduct occurring in the course of his most recent work, as determined under duly prescribed regulations, shall not be eligible for benefits until he has been employed in each of 10 subsequent weeks (whether or not consecutive) and, notwithstanding § 46–101, has earned remuneration from employment equal to not less than 10 times the weekly benefit amount to which he would be entitled pursuant to § 46–108(b).
> (2) For the purposes of this section, the term 'misconduct' means an act of willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of his employees, negligence to such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or showing an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer.

D.C.Code § 46–111(b)(1)–(2) (1983).
Regulations provided the following examples of misconduct:
(a) Willful violation of employer's rules;
(b) Intoxication;
(c) Repeated disregard of reasonable orders;
(d) Sabotage;
(e) Gross neglect of duties;
(f) Insubordination; and
(g) Dishonesty.
7 DCMR § 312.3 (1986).

4. As we have done previously, *see Washington Times v. District of Columbia Dep't of Empl. Servs.*, 724 A.2d 1212, 1220 (D.C.1999), we shall refer to "other than gross misconduct" as "simple misconduct" throughout this opinion for ease of reference.

5. The legislation was first enacted on an emergency basis, *see* D.C. Act No. 9–349, § 106, 40 D.C.Reg. 559, 571 (1993), and subsequently became permanent under D.C. Law 9–260, § 106, 40 D.C.Reg. 5420, 5433 (1993). We find ourselves puzzled by indications in the record that the Appeals Examiner, when she issued her decision, also provided petitioner with the outdated version of the applicable sections of the Unemployment Compensation Act, which describes only "misconduct," rather than the current statutory scheme that delineates the two types of misconduct.

(2) For weeks commencing after January 3, 1993, any individual who is discharged for misconduct, other than gross misconduct, occurring in the individual's most recent work, as defined by duly prescribed regulations, shall not be eligible for benefits for the first 8 weeks otherwise payable to the individual or until the individual has been employed in each of 8 subsequent weeks (whether or not consecutive) and, notwithstanding § 51–101, has earned wages from employment as defined by this chapter equal to not less than 8 times the weekly benefit amount to which the individual would have been entitled pursuant to § 51–107(b). In addition, such individual's total benefit amount shall be reduced by a sum equal to 8 times the individual's weekly benefit amount.

(3) The District of Columbia Unemployment Compensation Board shall add to its rules and regulations specific examples of behavior that constitute misconduct within the meaning of this subsection.

Pursuant to subsection (3), DOES issued regulations that defined each type of misconduct as well as giving examples,[6] which we have previously discussed at some length in prior opinions. *See, e.g., Giles v. District of Columbia Dep't of Empl. Servs.,* 758 A.2d 522, 524–25 (D.C.2000); *Washington Times, supra* note 4, 724 A.2d at 1216–18. Given that a finding of gross misconduct entails a far more severe penalty than that for simple misconduct, it is obviously important that DOES examiners, when confronted with allegations of "misconduct," make an explicit and unambiguous finding as to which type of misconduct, if any, led to an employee's termination.

 DOES regulations and our case law help guide examiners in determining whether certain behaviors constitute gross misconduct or simple misconduct. Certain principles, though, gleaned from our case law prior to and subsequent to the statutory revision,[7] apply whenever misconduct of either kind is alleged. For example, the burden always rests on the employer to prove misconduct. *Giles, supra,* 758 A.2d at 525–26.[8] Also, "[a] prerequisite to the

---

**6.** DOES has defined gross misconduct as "an act which deliberately or willfully violates the employer's rules, deliberately or willfully threatens or violates the employer's interests, shows a repeated disregard for the employee's obligation to the employer, or disregards standards of behavior which an employer has a right to expect of its employee." 7 DCMR § 312.3 (2002). Examples of conduct that merit the severest penalty possible include (but are not limited to) sabotage, unprovoked assault or threats, arson, theft or attempted theft, dishonesty, insubordination, repeated disregard of reasonable orders, intoxication, use or possession of a controlled substance, willful destruction of property, and repeated absence or tardiness following warnings. 7 DCMR § 312.4.

Simple misconduct has been defined as "an act or omission by an employee which constitutes a breach of the employee's duties or obligations to the employer, a breach of the employment agreement or contract, or which

adversely affects a material employer interest. The term '[simple] misconduct' shall include those acts where the severity, degree, or other mitigating circumstances do not support a finding of gross misconduct." 7 DCMR § 312.5. Examples include (but are not limited to) minor violations of employer rules, conducting unauthorized personal activities during business hours, absence or tardiness that does not amount to gross misconduct, and inappropriate use of profane or abusive language. 7 DCMR § 312.6.

**7.** "Precedents under the [prior] standard … [still] retain their relevance." *Washington Times, supra* note 4, 724 A.2d at 1217.

**8.** 7 DCMR § 312.8 provides: "In an appeal hearing, no misconduct shall be presumed. The absence of facts which affirmatively establish misconduct shall relieve a claimant from offering evidence on the issue of misconduct."

denial of benefits in a misconduct case is that a finding of misconduct must be based fundamentally on the reasons specified by the employer for the discharge." *Smithsonian Institution v. District of Columbia Dep't of Employ. Servs.*, 514 A.2d 1191, 1194 (D.C.1986). If, as appears to have been the case here,[9] a finding of misconduct of either type is predicated on the employee's violation of an employer's rule, the Appeals Examiner must also determine:

(a) That the existence of the employer's rule was known to the employee;

(b) That the employer's rule is reasonable; and

(c) That the employer's rule is consistently enforced by the employer.

7 DCMR § 312.7.

Finally, "the question whether the employee committed misconduct must be resolved with reference to the statutory purpose, which is to protect employees against economic dependency caused by temporary unemployment." *Butler v. District of Columbia Dep't of Empl. Servs.*, 598 A.2d 733, 735 (D.C.1991).

■ In reviewing DOES's decisions, we must affirm if "(1) the agency made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) the [agency's] conclusions flow rationally from its findings of fact. We defer to agency findings of fact so long as they are supported by substantial evidence. Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Giles, supra*, 758 A.2d at 524 (citations omitted).

### III. Analysis

With this backdrop in mind, we turn to the particular circumstances of this case. We begin by quoting in full the "Conclusion" portion of the decision of the Appeals Examiner that is before us for review:

[Petitioner] is found to have neglected his duty as a maintenance technician by not taking care of the repair immediately or contacting management at once to advise them of the problem. He is found to have violated the employer's policy (prohibiting unsatisfactory job performance) which was known to him, reasonable and consistently enforced. [Petitioner] offered no mitigating factors or a defense for his failure to advise his employer of the leak.

■ Petitioner first argues that no finding of misconduct was proper because the employer rule petitioner violated was neither reasonable nor consistently enforced, as required by 7 DCMR § 312.7. Regarding reasonableness, petitioner contends that the employer rule here, prohibiting poor work performance, is so vague that it "fails to give employees fair notice of the standard of conduct expected of them and is *per se* unreasonable." We have, however, held to the contrary. "While unsatisfactory work performance may amount to 'misconduct' in some instances, implicit in this court's definition of 'misconduct' is that the employee intentionally disregarded the employer's expectations for performance." *Washington Times, supra* note 4, 724 A.2d at 1217–18 (citation and internal quotation marks omitted). We have also stated that unsatisfactory job performance may be classified as gross misconduct when it is established that an employee performed at a standard far below the employee's known skill level. *Giles, supra*, 758 A.2d at 526–27.

9. Again, as the quoted "Conclusion" set forth below indicates, the examiner's decision is not entirely clear on the point. In its brief to us, DOES asserts that this was the basis for the finding of gross misconduct.

As for consistent enforcement, the Appeals Examiner's finding appears to be based on Wells's testimony that the employer consistently enforced this particular policy and that to her knowledge no employee who had engaged in the same type of behavior as petitioner was still with the employer. Petitioner attempts on appeal to rebut this evidence by pointing out that on August 13, the date of the incident, petitioner's supervisor, Serna Adineal, failed to respond to several maintenance calls and was not disciplined in any way. This argument, though, ignores the fact that it was petitioner, and not Adineal, who was "on call" on August 13.[10]

■ It is petitioner's second argument, that the Appeals Examiner failed to make necessary findings regarding his mental state, that clearly compels a remand. According to the Appeals Examiner, petitioner was "found to have *neglected his duty* as a maintenance technician ... [and] to have violated the employer's policy ... which was known to him, reasonable and consistently enforced." (emphasis added) In describing his conduct as "neglect of duty,"[11] the Appeals Examiner suggested that she may have believed petitioner had acted negligently in responding to the leak. If true, this would negate at least a finding of gross misconduct, because a violation of

an employer's rule constitutes gross misconduct only when done "deliberately or willfully." 7 DCMR § 312.3.[12] Furthermore, the Appeal Examiner's terse conclusion did not adequately address petitioner's own testimony as to his state of mind, *i.e.,* his belief that he acted reasonably when he encountered what he considered to be a minor leak.

■ Given the serious consequences that a finding of gross misconduct entails, we must remand when the examiner has failed to make explicit and clear findings sufficient to bring petitioner within the disqualification provisions of § 51–110(b). *See Giles, supra,* 758 A.2d at 526–27; *Long v. District of Columbia Dep't of Empl. Servs.,* 570 A.2d 301, 303–05 (D.C. 1990). We are therefore constrained to remand this case so DOES may make a definitive finding regarding petitioner's mental state, and otherwise take a "hard look" at petitioner's claim in the context of the statutory and regulatory scheme relating to gross and simple misconduct. *Washington Times, supra* note 4, 724 A.2d at 1221.[13]

*So ordered.*

10. Nonetheless, it is at least arguable whether the findings and record here sufficiently comply with the dictates of *Freeman v. District of Columbia Dep't of Empl. Servs.,* 575 A.2d ·1200, 1204–05 (D.C.1990), a case decided under the old law. Since we are remanding in any event, DOES should revisit this issue as well.

11. The Appeals Examiner's statement that petitioner "neglected his duty" mirrors language used by the employer in explaining why petitioner was discharged.

12. The further conclusion that petitioner violated the employer's rule concerning unsatisfactory job performance "which was known

to him" does not clearly hold that the violation was even intentional, which may be required even for a finding of simple misconduct. *See Washington Times, supra* note 4, 724 A.2d at 1217–18; *Jadallah v. District of Columbia Dep't of Empl. Servs.,* 476 A.2d 671, 675 (D.C.1984) (per curiam).

13. Given that AIMCO/NHP bore the burden of proving misconduct of either kind, "[w]e see no need ... to reopen the hearing, thereby giving the [employer] a second bite at the proverbial apple; rather, the [agency] on remand shall make the necessary finding based on the existing record." *Smithsonian Institution, supra,* 514 A.2d at 1195.

Petitioner suggests to us that the evidentiary record is insufficient to support a finding of misconduct of either kind. We do not now address that argument, pending the outcome of proceedings on remand.