Michael LOVENDUSKY,
et al., Petitioners,

v.

**DISTRICT OF COLUMBIA BOARD
OF ZONING ADJUSTMENT,
Respondent.**

**St. Patrick's Episcopal Church and
Day School, Intervenor.**

No. 03–AA–419.

District of Columbia Court of Appeals.

Argued May 13, 2004.

Decided June 10, 2004.

---

Michael Lovendusky, pro se, for petitioners.

Mary T. Connelly, Assistant Corporation Counsel, Robert J. Spagnoletti, Corporation Counsel, and Edward E. Schwab, Acting Deputy Corporation Counsel, filed a statement in lieu of brief, for respondent.*

Deborah H. Baum, with whom Allison C. Prince and Gerard M. Babendreier, Washington, were on the brief, for intervenor.

Before REID and WASHINGTON, Associate Judges, and NEBEKER Senior Judge.

REID, Associate J.

Petitioners Michael Lovendusky and others challenge the decision of respondent District of Columbia Board of Zoning Adjustment ("BZA") granting a special exception to intervenor St. Patrick's Episcopal Church and Day School ("St. Patrick's") to operate a middle school in a MacArthur Boulevard neighborhood in the Northwest quadrant of the District of Co-

---

* After oral argument in this case, the Mayor of the District of Columbia issued an order changing the name of the Office of the Corporation Counsel. See Mayor's Order 2004–92, May 26, 2004.

lumbia. Petitioners primarily assert that the BZA failed to consider properly the views of some 203 neighbors and the affected Advisory Neighborhood Commission ("ANC"). We conclude that the BZA properly considered and gave "great weight" to the views of the ANC. In addition, although the BZA implicitly examined and addressed issues and concerns articulated by the adjoining and nearby neighbors, nothing in the zoning statute or regulations required that it either treat those views as "material" or address them with particularity. We dispose of the other issues raised by the petitioners summarily.

## FACTUAL SUMMARY

In January 2002, the Washington Psychoanalytic Society submitted an application for a special exception in behalf of St. Patrick's to allow the operation of a middle school ("the Day School") for 60 students. At the time, St. Patrick's was in the process of purchasing property located at 4925 MacArthur Boulevard, N.W. from the Washington Psychoanalytic Society. The sale was completed in late March 2002, and St. Patrick's assumed responsibility for the application for the special exception. Historically, the site has been used by schools since 1961. At that time, a school for lower elementary grades was established for 25 children of German diplomats. When the Washington Psychoanalytic Society obtained the premises, it established and offered a post-graduate program in psychoanalysis for 75 psychiatrists before selling the property to St. Patrick's.

Two District of Columbia agencies reviewed St. Patrick's application—the Office of Planning ("OP") and the District Division of Transportation ("DDOT")—and provided reports and testimony. OP recommended that the application be approved, but with certain conditions designed to respond to neighborhood con-

cerns. DDOT concluded that there would be no adverse traffic or parking impacts in light of the controls to be implemented by the Day School, such as busing the children from St. Patrick's main campus to the middle school site.

Opposing the plan were ANC 3D, including its Chairperson, John Finney; Lawrence Skrivseth and Cathy Wright, who resided in premises adjacent to the school site; Michael and Meleva Lovendusky, who lived across the street from the site; and Neighbors United Trust, an organization of property owners who lived near the school site and who were represented by Nancy Feldman, Alma Gates, and Catherine Van Sickle De Mallie. These individuals and entities were accorded party status. Most of them testified at the hearing, filed written comments, and questioned witnesses during the hearing on St. Patrick's application. Neighbors United Trust presented testimony from a traffic expert, Jawahar Mehra, and Mr. Skrivseth prepared and introduced traffic data. Some 203 adjoining and nearby property owners filed a petition opposing the application for a special exception. The main arguments against the school project pertained to traffic, noise, parking, the integrity of the neighborhood, and the perception that St. Patrick's could not be trusted to abide by any conditions imposed on the special exception.

Supporting the application for a special exception, in addition to those connected to St. Patrick's, were members of the Palisades Citizens Association which voted (124–41) to approve the application. Some other residents also voiced individual support for the middle school.

At the conclusion of the hearings and presentation of evidence, the BZA discussed the matter in detail, and voted to add certain conditions before voting on the special exception. The conditions were

aired extensively prior to their adoption. After all of the conditions had been duly adopted, the BZA unanimously voted "approval for [St. Patrick's special exception application] with the established conditions." The BZA's written "Decision and Order" was issued on March 25, 2003. It contained extensive factual findings regarding (1) the site and surrounding properties; (2) the historic and proposed use of the site, including proposed controls and neighborhood concerns about the use; (3) traffic flow, the school's proposed management plan for traffic control, DDOT and traffic experts' testimony from both sides, ANC 3D's congestion concerns and the limits of the Day School's proposed traffic plan; (4) plans for parking, DDOT's and OP's comments about those plans, and ANC 3D's views regarding the inadequacy of 15 parking spaces and the loss of parking spaces in front of residents' homes; (5) noise impacts and proposed controls by St. Patrick's, the conclusions of St. Patrick's sound expert, OP's recommendations for noise control, and ANC 3D's concern for the tranquility of the neighborhood; and (6) OP's view of the proposed middle school's consistency or "harmony" with the District's Zoning Regulations and Map, and its emphasis on the continual use of the site for school operations "for more than 40 years."

The BZA also made detailed conclusions of law regarding the major areas of concern after "giv[ing] great weight to the recommendations of the [OP] and to the issues and concerns of ANC 3D." Its major conclusion was that "the proposed private school, as conditioned by the Board, can be located at the subject property so that it is not likely to become objectionable to adjoining and nearby property." With respect to noise, the BZA "[was] not persuaded by ANC 3D or the parties in opposition," and essentially adopted the recommendations of OP, credited the testimony of St. Patrick's sound expert, and imposed conditions 1 through 6.[1] With regard to traffic, the BZA credited the testimony of DDOT and St. Patrick's traffic expert, found the proposed plans of the Day School for traffic control to be appropriate and potentially effective, but in response to neighborhood concerns imposed conditions 7 and 8.[2] As for parking, the BZA revisited the Day School's parking plans and found them to be sound; credited St. Patrick's testimony as well as the conclusions of DDOT and OP, and determined that: "In light of the number of employees, limits on the use of the subject property, and requirements for off-site parking for special events, [it was] not persuaded by the ANC's assertion that the reconfigured parking lot would be inadequate and that the school employees and visitors will park on Ashby Street," one of the major concerns of the surrounding residents. However, the BZA imposed conditions 9 through 15 to ensure that parking would not become a problem for the surrounding neighbors.[3]

In addition, the BZA focused on another central complaint of the adjoining and nearby neighbors, "that the subject prop-

---

1. These conditions were designed to curtail noise by, among other things, prohibiting organized sports on the property, and banning loudspeakers and amplified music.

2. Condition 7 in part required St. Patrick's to "provide a shuttle bus system" to transport students to and from the main site of the school. "[I]n coordination with the shuttle bus system," St. Patrick's must "establish a carpool program" to carry students to and from the main site.

3. Conditions pertaining to parking included the establishment of 15 parking spaces on the site of the middle school (condition 10), restrictions on late afternoon and evening activities (condition 11), and the arrangement of "adequate off-street parking for daytime and evening special events" (condition 13).

erty is 'inherently too small' for private school·use." Rejecting St. Patrick's plan to operate the middle school for 60 students, the BZA accepted OP's recommendation of "a maximum of 40." Condition 16 specifies that: "[St. Patrick's] shall limit enrollment at the subject property to a maximum of 40 students in grades 7 through 9." The BZA directly addressed ANC 3D's fears, as well as implicitly those of the adjoining and nearby neighbors who opposed the middle school, that St. Patrick's would increase the number of students at the site, concluding that St. Patrick's "is not permitted to exceed the cap established by [the BZA's] order, and that any proposal to increase enrollment at the subject property in the future would require approval by the Board as a special exception."

Since "the parties in opposition" voiced concerns about other areas, the BZA also addressed arguments pertaining to other "objectionable conditions, including potential adverse impacts relating to stormwater runoff, privacy, diminished property values, or obligations for enforcing conditions of approval of the proposed private school." Among those issues addressed was ANC 3D's and "the parties in opposition['s]" assertion about the impact of the middle school on surrounding property values. The BZA declared that "no party offered compelling evidence demonstrating the proposed school's impact on property values." And, the BZA "was not persuaded by" the opposition's description of enforcement measures, reflected in the twenty conditions attached to the approval of St. Patrick's application, as " 'unrealistic' " and " 'a continual burden on the neighborhood and its volunteer civic participants.' " The BZA required the establishment of a community liaison committee with specified, required duties (condition 18) as an effective contributor to enforcement. And it added a trigger for the termination of the special exception in the event of the school's violation of the conditions (condition 20).

Finally, the BZA addressed the "harmony [of the special exception] with the general purpose and intent of the Zoning Regulations and Zoning Maps." It determined, in part, that the proposed school is located in a " 'low density residential land' use category" and would continue to "remain predominantly residential." Moreover, the renovations at the proposed site were designed to "preserve the residential appearance of the existing building while enhancing its safety and accessibility features." Condition 19 imposed limitations on the expansion of the building.

## ANALYSIS

Petitioners contend in their brief that the BZA failed to consider properly the views of some 203 adjoining and nearby neighbors who opposed the application for the special exception, as well as the opposing views of the affected advisory neighborhood commission. At oral argument, petitioners modified their argument by maintaining, in essence, that the views of the 203 adjoining and nearby neighbors were material and should have been addressed with particularity by the BZA. In their reply brief, they insist that: "By failing to identify the very existence of the 203 objecting residents of 'adjoining and nearby property', the [BZA] Order fails to make a finding of fact on a material contested issue." Furthermore, they claim, "The omission of any reference to the objecting 203 adjoining and nearby neighbors ... requires remand of the case." Intervenors claim that there is no authority to support petitioners' argument that the BZA must give "greater weight to [the contentions of] adjacent and nearby residents," and that petitioners essentially ask this court to re-weigh the evidence and to

substitute its judgment for that of the BZA.

■ We begin with our standard of review governing this matter. Generally, "[o]ur review of the [BZA's] factual determinations is deferential." *George Washington Univ. v. District of Columbia Bd. of Zoning Adjustment,* 831 A.2d 921, 931 (D.C.2003). We "must uphold the validity of the BZA's findings if they are 'supported by and in accordance with . . . reliable, probative, and substantial evidence.'" *Georgetown Residents Alliance v. District of Columbia Bd. of Zoning Adjustment,* 816 A.2d 41, 45 (D.C.2003) (citations omitted). "Substantial evidence is relevant evidence which a reasonable trier of fact would find adequate to support a conclusion." *George Washington Univ., supra,* 831 A.2d at 931 (citing *Giles v. District of Columbia Dep't of Employment Servs.,* 758 A.2d 522, 524 (D.C.2000)). We will not reverse the BZA's conclusions "unless they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *George Washington Univ., supra,* 831 A.2d at 931 (citing D.C.Code § 2–510(a)(3)(A) (2001)).

Next, we turn to applicable regulatory and statutory provisions. Section 206.2 of the Zoning Regulations governing private schools provides that: "The private school shall be located so that it is not likely to become objectionable to adjoining and nearby property because of noise, traffic, number of students, or otherwise objectionable conditions." 11 DCMR § 11–206 (2003). In addition, under D.C.Code § 1–309.10(a) (2001) "[e]ach Advisory Neighborhood Commission ["ANC"] may advise . . . all independent . . . boards . . . of the government of the District of Columbia with respect to all proposed matters of District government policy . . . ." Section 1–309.10(d)(3)(A) and (B) further provide:

(3)(A) The issues and concerns raised in the recommendations of the [ANC] shall be given great weight during the deliberations by the government entity. Great weight requires acknowledgment of the [ANC] as the source of the recommendations and explicit reference to each of the Commission's issues and concerns.

(B) In all cases the government entity is required to articulate its decision in writing. The written rationale of the decision shall articulate with particularity and precision the reasons why the Commission does or does not offer persuasive advice under the circumstances. In so doing, the government entity must articulate specific findings and conclusions with respect to each issue and concern raised by the [ANC]. Further, the government entity is required to support its position on the record.

In *Foggy Bottom Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 791 A.2d 64 (D.C.2002), we reiterated our interpretation of the phrase "great weight." " 'Great weight' implies explicit reference to each ANC issue and concern as such, as well as specific findings and conclusions with respect to each." *Id.* at 76 (citing *Kopff v. District of Columbia Alcoholic Beverage Control Bd.,* 381 A.2d 1372, 1384 (D.C.1977)).

■ Our examination of the applicable law and regulations reveals no authority for the petitioners' insistence that the BZA must consider the arguments of adjoining and nearby neighbors as "material" or that this court must remand this matter to the BZA because of the alleged "omission of any reference to the objecting 203 adjoining and nearby neighbors in [its] Order." Section 206.2 of Title 11 of the District of Columbia Municipal Regulations includes no mandate that the BZA consider the views of adjoining and nearby neighbors as "material." Nor does it require the BZA to address those views with particularity.

Section 206.2 simply requires that a private school in a R–1 residential district be located so that it is not "objectionable to adjoining and nearby property because of noise, traffic, number of students, or otherwise objectionable conditions." In short, § 206.2 establishes standards governing private schools in a residential district.

Nevertheless, in its decision and order, the BZA clearly took into consideration and addressed issues raised by the 203 neighbors who filed a petition in opposition to St. Patrick's application for a special exception, including the assertion that the middle school would result in diminished property values in the surrounding area. Indeed some of the issues raised by some of the 203 neighbors were the same ones identified by ANC 3D. The fact that the BZA did not reference explicitly the "203 neighbors" who filed the petition is not fatal to the BZA's decision and order.

With respect to the ANC, D.C.Code § 1–309.10(d)(3)(A) required the BZA to "give[ ] great weight during [its] deliberations" to "[t]he issues and concerns raised in the [ANC's] recommendations." That is, the BZA had to make "explicit reference to each ANC issue and concern ..." and was obligated not only to craft its "written rationale" with "particularity and precision" but also to render "specific findings and conclusions with respect to each [issue and concern]." *Foggy Bottom Ass'n, supra,* 791 A.2d at 76; D.C.Code § 1–309.10(d)(3)(B). Or, as § 1–309.10(d)(3)(A) specified: "Great weight requires acknowledgment of the [ANC] as the source of the recommendations and explicit reference to each of the [BZA's] issues and concerns."

■ Contrary to petitioners' arguments, the BZA satisfied its statutory duty with respect to its treatment of ANC 3D's recommendations, issues and concerns. In its letter of April 4, 2002, to the BZA, ANC 3D reported that it had discussed St. Pat-

rick's application at its April 3, 2002 meeting, and had "held three separate hearings in February, March and April." Although "[m]any issues were raised," ANC 3D "emphasize[d] that in ... final deliberations on [the] recommendation to [the BZA], [it] chose, as does the BZA in considering requests from private schools for a special exception to limit its consideration to the terms set forth in [specified] zoning regulations." Specifically, ANC 3D referenced 11 DCMR § 206.2 which provides that: "The private school shall be located so that it is not likely to become objectionable to adjoining and nearby property because of noise, traffic, number of students, or otherwise objectionable conditions." It also focused on 11 DCMR § 206.3 which reads in part: "Ample parking space ... shall be provided to accommodate the students, teachers and visitors likely to come to the site by automobile." The letter sent to the BZA by ANC 3D set forth issues and concerns around the § 206 factors: noise, traffic, numbers of students, otherwise objectionable conditions, and parking. The letter also recommended that St. Patrick's application be denied since it "would be inconsistent with the character of the neighborhood and would not be 'in harmony with the general purpose and intent' of the residential zoning in this neighborhood." *See* 11 DCMR § 3104.1 ("The [BZA] is authorized ... to grant special exceptions ... where, in the judgment of the [BZA], the special exceptions will be in harmony with the general purpose and intent of the Zoning Regulations and Zoning Maps and will not tend to affect adversely, the use of neighboring property in accordance with the Zoning Regulations and Zoning Maps, subject to the special conditions specified in this title ....").

Our review of the BZA's extensive oral deliberations and its detailed written decision and order satisfies us that it explicitly addressed and made specific findings and

conclusions with respect to each of the issues and concerns the ANC 3D raised to the BZA's attention. Indeed the BZA structured its written findings and conclusions around the categories of "[t]he subject property," "[t]he proposed private school use," "traffic," "number of students," "parking," "noise," "otherwise objectionable conditions," and "harmony with Zoning Regulations and Map." Furthermore, the twenty conditions attached to St. Patrick's special exception largely reflect the issues and concerns raised by ANC 3D. In short, the BZA satisfied its duties under the zoning law and regulations with respect to the issues and concerns of the ANC.

We dispose of petitioners other arguments summarily. They fault the BZA for "announc[ing] its interpretation that the [zoning] regulations 'preclude' it from ever finding circumstances that would deny a private school's application for a special exception." They refer to this alleged announcement as "the finding of a 'ground rule' that, in all cases, private school location in residential zones is permitted in the zoning regulation regardless of the regulation's distinction between public and private schools." Petitioners misread the transcript of the BZA's December 3, 2002 transcript pertaining to St. Patrick's application. That transcript shows that one BZA Commissioner made a very short motion and then proceeded to discuss it. The motion was as follows: "I would move approval of the application subject to conditions to be brief about it." During her comments on her own motion she essentially voiced the opinion that the concerns

of the opponents of the special exception could be met by "a set of conditions."[4] After other Commissioners had spoken, this Commissioner remarked: "[A]s the BZA, we have to accept that it is appropriate for private schools under certain conditions to be located in the R–1 zone." Read in context, the Commissioner's opinion is consistent with the BZA's special exception authority under 11 DCMR § 3104.1 "to grant special exceptions ... subject in each case to the special conditions specified in ... title [11 of the District's Municipal Regulations]." To ensure that those "special conditions" for a private school located in an R–1 zone, set forth in 11 DCMR § 206, were met in this case, the BZA, in its discretion, conditioned the special exception on twenty conditions relevant to the middle school's location.

■ Finally, petitioners in essence claim that the BZA provided no effective enforcement mechanism for its order. Among the conditions designed to ensure enforcement of the BZA's decision and order are conditions 18 and 20. Condition 18 requires St. Patrick's to "establish and maintain a community liaison committee to address community concerns related to the private school use of the subject property." St. Patrick's must carry out certain specified duties with respect to the community liaison committee. In addition, condition 20 provides that:

The special exception shall be valid except that this Order shall terminate and require modification upon a finding by the [BZA] that [St. Patrick's] has either admitted violating, paid a fine for violat-

---

4. The Commissioner stated:
   [O]ne of my huge concerns is that what we have is a situation where certain members of the community and they're justified in their concerns, have— what's been presented to us is that under no circumstances can this school exist without creating adverse conditions at this location. The zon-

ing ordinance and the special exception process basically precludes us from drawing that conclusion. There has to be a set of conditions, almost by definition that will allow this school to be located at this site. And it's our job to figure out what those conditions are.

ing, or has been found by the Department of Consumer and Regulatory Affairs, after hearing, to have violated the same condition on three or more occasions within five years.

During its deliberations the BZA carefully considered how to enforce its decision and how to make certain that the § 206 conditions were met. We cannot say on the record before us that the BZA's enforcement measures cannot succeed. There is no showing that St. Patrick's has not carried out its responsibilities with respect to the community liaison committee, nor that the BZA has made the requisite findings to trigger condition 20. Consequently, the enforcement issue is not ripe for our consideration.[5]

Accordingly, for the foregoing reasons, we affirm the agency's decision.

*Affirmed.*

---

**5.** Petitioners also press their contention relating to St. Patrick's alleged "lack of credibility" and argue "[t]hat the private school's officials cannot be trusted." We do not consider these credibility contentions. We have long said that "credibility is to be determined by the finder of fact, who is not confined to a cold paper record but has the opportunity to observe the demeanor of the witnesses." *Rafferty v. District of Columbia Zoning Comm'n*, 583 A.2d 169, 177 (D.C.1990) (citing *Harris v. District of Columbia Comm'n on Human Rights*, 562 A.2d 625, 631 (D.C.1989)) (other citation omitted).